**GRAND FALOON TAVERN, INC.,**
Plaintiff-Appellant,

v.

**Robert WICKER, Etc., et al.,**
Defendants-Appellees.

No. 80–5834.

United States Court of Appeals,
Eleventh Circuit.

March 15, 1982.

Richard L. Wilson, Orlando, Fla., for plaintiff-appellant.

William E. Weller, Cocoa Beach, Fla., for defendants-appellees.

Before MORGAN, HILL and KRAV-TICH, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

On this appeal we are presented with a question of the facial validity of a Cocoa Beach, Florida ordinance prohibiting nude and semi-nude entertainment in establishments where alcoholic beverages are sold. We initially note that the Supreme Court in *New York State Liquor Authority v. Bellanca*, 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981), upheld a similar state statute on the basis of authority conferred under the Twenty-first Amendment. *Bellanca* does not, however, resolve the issue before us because Cocoa Beach, a municipality lacking any delegated regulatory authority under the Twenty-first Amendment, is required to justify the ordinance solely as a legitimate exercise of its police power.[1]

1. The Twenty-first Amendment refers to the states the power to regulate the distribution and use of intoxicating liquors. In *Board of County Commissioners of Lee County v. Dexterhouse*, 348 So.2d 916, 918 (Fla.App.1977), *aff'd*, 364 So.2d 449 (Fla.1978), the court held that the powers recited in the Twenty-first Amendment had not been shared with local governments under Florida law except for control over hours of operation, locations of businesses and sanitary regulations for establishments selling alcoholic beverages. Defendants therefore concede that the ordinance was enacted exclusively under the municipality's police power and that no authority could be drawn from the Twenty-first Amendment.

2. The ordinance provides:
   *Section 1.* Chapter 3 of the Code of Ordinances of the City of Cocoa Beach, Florida, is amended by adding thereto a new section to be numbered 3–11 and to read as follows:
   3–11. Nudity on Premises where Alcoholic Beverages are offered for sale.
   (a) It shall be unlawful for any person maintaining, owning, or operating a commercial establishment located within the City of Cocoa Beach, Florida, at which alcoholic beverages are offered for sale for consumption on the premises:
   (1) To suffer or permit any female person, while on the premises of said commercial establishment, to expose to the public view that area of the human breast at or below the areola thereof.

*See Bayou Landing, Ltd. v. Watts*, 563 F.2d 1172 (5th Cir. 1979). The District Court for the Middle District of Florida concluded that the municipality had justified the incidental burdens on First Amendment rights created by the regulation of nude entertainment and upheld the ordinance. For the reasons stated below, we affirm.

I

Plaintiff-appellant, Grand Faloon Tavern, Inc. (hereinafter plaintiff) is a Florida corporation which operates a tavern within the City of Cocoa Beach, Florida. Defendants-appellees (hereinafter defendants) are the Chief of Police for Cocoa Beach and the members of the Cocoa Beach City Commission at the time the complaint was filed.

In December 1979, the City of Cocoa Beach enacted an ordinance proscribing the actual or simulated exposure of various private parts or female breasts in establishments selling alcoholic beverages. Cocoa Beach, Fla., Ordinance 612 (Dec. 6, 1979).[2]

(2) To suffer or permit any female person, while on the premises of said commercial establishment to employ any device or covering which is intended to give the appearance of or simulate such portions of the human female breast as described in subsection (a)(1).
(3) To suffer or permit any person, while on the premises of said commercial establishment to expose to public view his or her genitals, pubic area, buttocks, anus or anal cleft or cleavage.
(4) To suffer or permit any person, while on the premises of said commercial establishment, to employ any device or covering which is intended to give the appearance of or simulate the genitals, pubic area, buttocks, anus, anal cleft or cleavage.
   (b) It shall be unlawful for any female person, while on the premises of a commercial establishment located within the City of Cocoa Beach, Florida, at which alcoholic beverages are offered for sale for consumption on the premises, to expose to public view that area of the human female breast at or below the areola thereof, or to employ any device or covering which is intended to give the appearance or simulate such areas of the female breast as described herein.
   (c) It shall be unlawful for any person, while on the premises of a commercial establishment located within the City of Cocoa Beach, Florida, at which alcoholic beverages are offered for sale for consumption on the

At the time the ordinance was passed two establishments, plaintiff's tavern named "Grand Faloon Tavern" and another called the "Booby Trap," offered patrons "topless" dancing as entertainment with alcoholic beverages as refreshment. It is undisputed that enactment of the ordinance was provoked by the distressing situation existing at the Booby Trap. Police records showed that, in response to extensive and varied criminal activity,[3] an inordinate number of police calls had to be made to the Booby Trap. The Cocoa Beach City Commission concluded that the separation of nudity and alcoholic beverages would lessen the drain on the city's resources by reducing the incidence of illicit conduct at establishments affected by the ordinance. Defendants admit, however, that the number of police calls to the Grand Faloon was commensurate with many other taverns in Cocoa Beach that did not offer any form of nude entertainment.

Plaintiff filed suit in United States District Court for the Middle District of Florida seeking injunctive and declaratory relief under 42 U.S.C. § 1983 and 28 U.S.C. § 1343 to prevent enforcement of the ordinance. Plaintiff challenged the ordinance on grounds that it violated the United States Constitution's guarantees of free speech and expression. The argument made by the plaintiff was essentially that the ordinance reached expression entitled to First Amendment protection, and that the records failed to provide sufficient justification for the resulting burden on constitutional rights.

A final hearing was held at which the only evidentiary materials before the court were the parties' pre-trial stipulations, the parties' pleadings and a deposition of City Police Chief Robert Wicker, which was admitted in evidence as the parties' joint exhibit. No testimony was presented at the final hearing. The trial court after hearing arguments by both counsel concluded that the disputed ordinance was a valid exercise of the municipality's police power under the rationale of *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980); *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); and *Young v. American Mini Theatres,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1975). The court found that "the record reflect[ed] a reasonable basis on which the city could have found a relationship between the policy of the ordinance and the purposes it seeks to accomplish." On appeal, plaintiff primarily challenges this determination, arguing that the ordinance has not been shown necessary to achieve the claimed governmental interest.[4]

premises, to expose to public view his or her genitals, pubic area, buttocks, anus or anal cleft or cleavage, or to employ any device or covering which is intended to give the appearance of or simulate the genitals, pubic area, buttocks, anus or anal cleft or cleavage.

(d) Any person who shall violate any provision of this Section shall be guilty of an offense against the City punishable as provided in City of Cocoa Beach Code, Sec. 1–8.

*Section 2.* If any provision of this ordinance, or its application to any person or circumstances, shall be held invalid, the remainder of the ordinance, or the application of the provision to other persons or circumstances, shall not be affected.

*Section 3.* If the owner, operator, licensee, lessor, lessee, manager, employee, or any other person participating in the operation of a commercial establishment located within the City of Cocoa Beach at which alcoholic beverages are offered for sale for consumption on the premises shall be convicted of any of the offenses designated in Section 3–11(a) as set forth in Section 1 hereof, then the City Finance Director shall revoke the occupational license for said establishment after giving a reasonable notice thereof to the holder of said license and affording the holder an opportunity to be heard as to why the revocation should not be issued.

*Section 4.* This ordinance shall take effect immediately upon its adoption.

3. The offenses occurring in and around the Booby Trap included homicide, narcotics, robbery, prostitution, lewdness, larceny, assault, battery, drunk and disorderly, and solicitation. In addition, a police department record of police calls to the Booby Trap included several references to rapes, prostitution by Booby Trap employees, and fights between the tavern's patrons.

4. As part of its initial issue on appeal plaintiff claims that the trial court found the activities of appellant's employees to be conduct rather than expression. Plaintiff argues that this find-

## II

Plaintiff's challenge to the Cocoa Beach ordinance is based on a theory of facial invalidity due to overbreadth. Under the doctrine of overbreadth, a court may deny the enforcement of an ordinance that "at the expense of First Amendment freedoms, . . . reaches more broadly than is reasonably necessary to protect legitimate [governmental] interests. . . ." *Reeves v. McConn*, 631 F.2d 377, 383 (5th Cir. 1980). However, as cautioned by the Supreme Court in *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973), the invalidation of a governmental measure for facial overbreadth is a remedy that should be applied "sparingly and only as a last resort." An overbreadth challenge is accordingly disallowed if the measure is readily subject to a limiting construction that would remove the threat of deterrence to constitutionally protected expression. *Id.; Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). Additionally, where both conduct and expression are involved, the overbreadth of a measure must be both real and substantial, "judged in relation to the [provision's] plainly legiti-

mate sweep." 413 U.S. at 615, 93 S.Ct. at 2917. It is within these limitations that we examine the merits of plaintiff's challenge.

Our analysis of the Cocoa Beach ordinance will essentially be in three parts. First, the scope of the ordinance will be articulated in terms of the constitutional rights implicated. Next we will isolate the nature and extent of the burdens placed on these First Amendment rights by the ordinance. Finally, we will examine the justifications claimed by Cocoa Beach to determine if they are sufficient to authorize the resulting constitutional restrictions under the four step inquiry articulated in *United States v. O'Brien*.[5]

## III

The real and substantial impact of the Cocoa Beach ordinance is on nude and seminude entertainment in taverns.[6] The Supreme Court has explicitly recognized that customary barroom dancing, while involving "the barest minimum of protected expression, . . . might be entitled to First and Fourteenth Amendment protection under some circumstances." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932–33, 95 S.Ct. 2561,

---

ing is contrary to an allegation made in its complaint and admitted by defendants in their answer. We disagree with plaintiff's interpretation of the trial judge's findings as well as the extent of the admissions made by defendant. In Paragraph 12 of its complaint, plaintiff alleged that "nudity during its employees' performances is a part of the expression which the dancers engage in." The trial court in its written decision stated that "the regulated activity involves a substantial element of conduct which is not within the protection of the First Amendment. . . ." After carefully considering both of these statements, we can perceive no conflict between the trial court's findings and the allegations conceded by defendants. Plaintiff's allegation does not mandate a finding that topless dancing constitutes pure expression, and the district court acknowledged that in conjunction with conduct an element of expression is presented by the nudity in the performances of plaintiff's employees. Finally, even if we were to accept plaintiff's argument, it would only be decisive of our decision if the constitutional analysis of an activity were controlled by the intent of the actor to express an idea. This approach was expressly rejected in *United States v. O'Brien*, 391 U.S. at 379, 88 S.Ct. at 1680.

5. In *United States v. O'Brien*, the Supreme Court upheld the conviction of a young man under an amendment to the draft laws making it a felony to knowingly destroy or mutilate a draft card. O'Brien had burned his draft card on the steps of a courthouse to protest the war in Viet-Nam. Although recognizing that O'Brien's actions were a form of expression, the Court concluded that the government's interest in the smooth and proper functioning of the draft sufficiently justified the incidental limitations on First Amendment rights. 391 U.S. at 382, 88 S.Ct. at 1681.

6. The district court held that "the language of the ordinance . . . suggest[s] that it probably will be narrowed by state court decisions to nudity employed as a means of promoting the sale of alcoholic beverages within bars and similar establishments. In fact one Florida appellate court has seemingly so construed a similar ordinance. *See Board of County Commissioners v. Dexterhouse*, 348 So.2d 916, 918 (Fla. App.1977)." On appeal plaintiff does not challenge this portion of the lower court's opinion. Moreover, our reading of *Dexterhouse* is in accord with the district court's conclusion.

2568, 45 L.Ed.2d 648 (1974); *New York State Liquor Authority v. Bellanca*, 452 U.S. at 715, 101 S.Ct. at 2600; *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972). The question remains, however, whether nude barroom dancing is entitled to the same degree of protection afforded speech clearly at the core of First Amendment values. A plurality of the Court in *Young v. American Mini Theatres*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976) (Burger, C. J., Stevens, J., White, J., and Rehnquist, J.) took the position that

> [while] the First Amendment will not tolerate the total suppression of erotic materials that have some arguably artistic value, it is manifest that society's interest in protecting this type of expression is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate. . . .

427 U.S. at 70, 96 S.Ct. at 2452. A majority of the Justices then on the bench (Justice Powell concurring and the four remaining Justices dissenting) took the opposite stance and argued that sexually explicit, non-obscene expression is entitled to the same protection accorded other forms of communication. The latter position has been assumed by those circuits that have faced the issue. *See Avalon Cinema Corporation v. Thompson*, 667 F.2d 659 (8th Cir. 1981) (en banc); *Fantasy Book Shop, Inc. v. City of Boston*, 652 F.2d 1115, 1126 (1st Cir. 1981); *see also Hart Book Stores, Inc. v. Edmisten*, 612 F.2d 821, 826–28 (4th Cir. 1979).[7] We do not need, however, to gamble on whether the analysis of the plurality in *Young* has since become the majority position of the Supreme Court. Even according nude barroom dancing full constitutional protection we find the record supports a sufficient justification for the incidental burdens pro-duced by the Cocoa Beach ordinance under the test in *United States v. O'Brien.*

■ The approach set out in *O'Brien* is properly applied when a governmental entity seeks to regulate non-communicative elements of an activity and thereby imposes incidental burdens on protected expression. 391 U.S. at 376, 88 S.Ct. at 1678. A regulation is then sufficiently justified, despite its incidental impact on First Amendment rights "[1] if it is within the constitutional power of the government; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on . . . First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Id.* at 377, 88 S.Ct. at 1679.

The only restriction imposed by the Cocoa Beach ordinance is in terms of the place where nude entertainment may be presented. This type of regulation has been recognized as independent of expressive or communicative elements of conduct in other contexts. *See Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) (regulation of disruptive noise adjacent to a school); *Cox v. Louisiana*, 379 U.S. 559, 563, 85 S.Ct. 476, 480, 13 L.Ed.2d 487 (1965) ("picketing and parading [are] subject to regulation even though intertwined with expression and association"); *see also Cameron v. Johnson*, 390 U.S. 611, 617, 88 S.Ct. 1335, 1338, 20 L.Ed.2d 182 (1968); *Zwickler v. Koota*, 389 U.S. 241, 249, 88 S.Ct. 391, 396, 19 L.Ed.2d 444 (1967). Yet one circuit has determined that when the conduct being regulated is a performance presented for purposes of entertainment, it is impossible to separate "speech" from "conduct" in order to determine the true subject of the regulation. *Chase v. Davel-*

---

**7.** The Second Circuit elaborating on the Supreme Court's evaluation in *Doran* of the First Amendment protection to be accorded nude barroom dancing, stated

> [W]e recognize that there is only a modicum of expression involved in the conduct of appellees' dancers. But that modicum is one of constitutional significance, both to the dancers who earn a livelihood by providing their particular form of entertainment, and per-haps more, to the customers of the appellees' establishments who for a variety of reasons, which may include the lack of economic means or mere differences in inclination, choose not to avail themselves of diversions deemed more tasteful or culturally rewarding by others.

*Salem Inn, Inc. v. Frank* (*Salem Inn II*), 522 F.2d 1045, 1048 (2d Cir. 1975).

*aar*, 645 F.2d 735, 739 (9th Cir. 1981). Accordingly the court in *Chase* expressed strong reluctance to apply *O'Brien* to facts very similar to those in the instant case. We agree that any attempt to isolate "speech" elements from the "conduct" aspects of nude dancing would be a labyrinthine task. *See also Stanley v. Georgia*, 394 U.S. 557, 566, 89 S.Ct. 1243, 1248, 22 L.Ed.2d 542 (1969) ("The line between the transmission of ideas and mere entertainment is much too elusive for this Court to draw, if indeed such a line can be drawn at all.") We cannot agree, however, that speech must be distilled from conduct, or *vice versa*, before *O'Brien* can be applied. We find it only necessary to conclude that nude entertainment necessarily involves a substantial degree of conduct, and that any artistic or communicative elements present in such conduct are not of a kind whose content or effectiveness is dependent upon being conveyed where alcoholic beverages are served. *See Young v. American Mini Theatres*, 427 U.S. at 79 n.2, 96 S.Ct. at 2456 n.2 (Powell, J., concurring).

The Cocoa Beach regulation of establishments where nude entertainment may be presented also has only an incidental impact on First Amendment rights. Compared to the "place" restrictions upheld in *Young*, the Cocoa Beach ordinance in the instant case creates equally slight or even lesser impairments to the expression of, and public access to, information and ideas. In *Young* the Court considered a Detroit ordinance that prohibited "more than two [regulated] uses within one thousand feet of each other," 427 U.S. at 54 n.6, 96 S.Ct. at 2444 n.6. "Regulated uses" included adult bookstores, adult motion picture theatres, adult mini motion picture threatres, *cabarets with nude or partially-nude entertainment*, dance halls, bars, pool halls, public lodging facilities, pawn shops and shoeshine parlors. *Id.* at 52 n.3, 96 S.Ct. at 2444 n.3. Adult bookstores, adult theatres and adult mini-theatres were described as those "distinguished or characterized by an emphasis on matter depicting, describing or relating to 'Specified Sexual Activities' or 'Specified Anatomical Areas'." Among the "Specified Anatomical Areas" set out in the statute were "[l]ess than completely and opaquely covered (a) human genitals, pubic region, (b) buttock, and (c) *female breast below a point immediately above the top of the areola....*" [Emphasis added] *Id.*

Cocoa Beach Ordinance No. 612 can be viewed as creating only two "regulated uses": the sale of liquor for on premises consumption and nude entertainment. Considered in this context, the Cocoa Beach ordinance requires "dispersal" in far fewer instances than required by the Detroit regulation in *Young*. Even in those limited instances where "dispersal" is required by Cocoa Beach, the regulated activities must only be segregated into separate establishments as opposed to the ordinance in *Young* which required a separation of at least 1000 feet between regulated uses. The Cocoa Beach ordinance, like the Detroit ordinance, does not directly or indirectly limit the *number* of establishments where protected expression may occur. Similarly, beyond the requirement of separation of uses there is no restriction contained in the ordinance on the location within Cocoa Beach where nude entertainment may be offered. We note that the Cocoa Beach ordinance applies to existing and future establishments while the regulation in *Young* applied only to future uses. Under the facts before us, however, we do not consider this factor to be critically decisive. *See also Hart Book Stores, Inc. v. Edmisten*, 612 F.2d 821 (4th Cir. 1979). The Cocoa Beach ordinance does not require that the economic burdens of relocation be incurred in order to continue protected expression. Nude dancing may continue at the same locations where such entertainment was offered prior to the enactment of Ordinance No. 612 so long as alcoholic beverages are not sold for on premises consumption. Thus, even with the application of the ordinance to existing establishments, there is no significant impairment of protected expression.

Having concluded that the ordinance has only an indirect and incidental impact on expression we can now apply the four part test of *O'Brien* to determine if the

city's actions are justified by a sufficiently substantial state interest. The presence in the instant case of the first part of the *O'Brien* test is not disputed. The regulation of activity which has demonstrated a capacity to induce breaches of the peace is a traditional and legitimate subject for the exercise of a municipality's police power.[8] *See Cantwell v. Connecticut*, 310 U.S. 296, 304, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940); *Kew v. Senter*, 416 F.Supp. 1101 (N.D.Tex. 1976) (three judge panel). The second question under *O'Brien* is whether the regulation *furthers* an important or substantial interest. Plaintiff in a pre-trial stipulation agreed that:

> [t]he passage of Cocoa Beach Ordinance No. 612 was based upon the collective belief of a majority of the Commissioners that it would have as *its purpose and effect* the lessening of police calls at the establishments set forth therein and the lessening of incidents of violations of law at said establishments. [Emphasis added]

Plaintiff does not dispute the legitimate and substantial nature of the interests claimed by the city. Instead plaintiff argues that the record contains insufficient evidence that nudity is the actual source of the problems giving rise to the claimed interest. No federal court authority has been found that sets forth the quantum of evidence required to support a measure imposing the burdens of the type here. Two general observations, however, provide a starting point for our inquiry. First, it is necessary for the record to contain *some* factual basis for the claim that entertainment in establishments serving alcoholic beverages results in increased criminal activity. *See Reeves v. McConn*, 631 F.2d 377, 387 (5th Cir. 1980); *Avalon Cinema Corporation v. Thompson*, 667 F.2d 659 (8th Cir.

1981). Second, the government has a greater burden in justifying a significant curtailment of protected activity than when the burden on First Amendment rights is merely incidental. *See Keego Harbor Co. v. City of Keego Harbor*, 657 F.2d 94, 98 (6th Cir. 1981).

The decisions of the Supreme Court in *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972) and *New York State Liquor Authority v. Bellanca*, 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981) provide direct authority on the issue before us only when the governmental entity claims authority under the Twenty-first Amendment. In *LaRue* the Court upheld a state statute that included a proscription of the actual or simulated "displaying of the pubic hair, anus, vulva or genitals" in licensed bars and nightclubs. 409 U.S. at 112, 93 S.Ct. at 394. (The statute did not apply to the mere exposure of female breasts.) The Court rested its decision on a determination that

> [t]he Department's conclusion, embodied in these regulations, that certain sexual performances and the dispensation of liquor by the drink ought not to occur at premises that have licenses was not an irrational one. Given the added presumption in favor of the validity of the state regulation in this area that the Twenty-first Amendment requires, we cannot hold that the regulations on their face violate the Federal Constitution.

*Id.* at 118–19, 93 S.Ct. at 397.

The statute upheld in *Bellanca* reached both "topless" and "bottomless" nude entertainment in establishments licensed to sell alcoholic beverages. Those challenging the New York Statute argued that *LaRue* was distinguishable because New York State had presented "no legislative finding that

---

**8.** Although Florida municipalities have only limited authority to regulate the sale of alcoholic beverages (see Note 1, *supra*) the Florida courts have ruled that regulation of nudity in establishments serving intoxicating liquors has not been preempted by the State. In *Dexterhouse* the Florida Court of Appeals considered the validity of a municipal ordinance almost identical to the Cocoa Beach ordinance in the instant case. The court noted a material dis-

tinction between "enactments which govern conduct of individuals while on the premises of their establishments, as opposed to the regulation of the licensees themselves in the sale and dispensing of alcoholic beverages." 384 So.2d at 916. The court held that the regulation of topless dancing in bars fell in the former category and thus would not invade the exclusive province of state control.

topless dancing poses anywhere near the problem posed by acts of 'gross sexuality.' " The Court rejected the argument, stating that "even if explicit legislative findings were required to uphold the constitutionality of this statute as applied to topless dancing, those findings exist in this case." Yet the only "findings" quoted in the Court's opinion were the following statutory purposes set out in an accompanying legislative memorandum:

> Nudity is the kind of conduct that is a proper subject of legislative action as well as regulation by the State Liquor Authority as a phase of liquor licensing. It has been held that sexual acts and performances may constitute disorderly behavior within the meaning of the Alcoholic Beverage Control Law. . . .

> Common sense indicates that any form of nudity coupled with alcohol in public place[s] begets undesirable behavior. This legislation prohibiting nudity in public will once and for all, outlaw conduct which is now quite out of hand.

The Court concluded that these statements were adequate to justify the ordinance "[g]iven the 'added presumption in favor of the state regulation' conferred by the Twenty-fifth Amendment. . . . "

Arguably the inference raised by the language used in both *LaRue* and *Bellanca* is that, absent a "Twenty-first Amendment presumption," similar regulations of nudity would have to be justified by greater "findings" than were presented in those cases. We are hesitant to draw such a negative inference. There is no indication of the analysis the Court would have employed had Twenty-first Amendment considerations not been involved. Further, the record in the instant case clearly offers stronger support for the Cocoa Beach claim of a connection between topless dancing, alcohol consumption and criminal activity than was set out in *Bellanca*.

█ The record in the instant case contains the stipulated purpose and believed effect of the ordinance, the deposition of Police Chief Robert Wicker and a fifty-two page listing of the police calls made to and around the Booby Trap between May 6, 1977 and October 31, 1979. The stipulation is essentially equivalent to the "findings" relied on in *Bellanca*. The report of police calls reveals that many of the activities occurring in and around the Booby Trap were of the same nature and severity as those cited by the Court in *LaRue*, including prostitution (in some instances by the female dancers), indecent exposure, rape, and numerous assaults. The testimony of Police Chief Wicker provides the necessary linkage between the stipulated purpose of the ordinance and the problems allegedly justifying it.

Wicker had been employed with the Cocoa Beach Police Department since 1961 and had been involved with almost every aspect of police work. He testified that the Booby Trap had the highest incidence of criminal activity of any tavern in Cocoa Beach, but agreed that far fewer police calls had to be made to the Grand Faloon. The amount of criminal activity at the Grand Faloon was, in the estimation of Wicker, equal to or perhaps slightly less than that at some of the Cocoa Beach bars not offering nude entertainment. Plaintiff argues that this lack of an inordinate number of police calls to the Grand Faloon disproves the City's hypothesis that nudity and the cited criminal activity are related. Wicker testified, however, that the lesser crime rate at the Grand Faloon was due to other factors, including such intangibles as "management." Throughout the deposition Wicker consistently testified that, based on his police experience, nude dancing combined with the consumption of alcohol resulted in crimes that would not have occurred had the nudity not been present. At one point in the deposition, counsel for Cocoa Beach elicited the following testimony:

> Q In your opinion, as a police officer, and based on your experience in the City of Cocoa Beach, do you believe that the enforcement of the ordinance in question is going to have a reduction in the number of calls that the Police Department is required to make through these establishments that provide this type entertainment?

A Yes, sir, I think so.

\* \* \* \* \* \*

Q You believe it would be a significant reduction in the number of police calls?

A Yes, sir.

Later during questioning by plaintiff's attorney, the following exchange occurred:

Q Let me ask you this question hypothetically. If you had two bars, one with nudity and alcohol, one without alcohol, both operated by the same person and that person was a conscientious operator with stringent controls, strict monitor of employees, strict security on the premises, and dedication to obeying the law, would you anticipate a difference in the crime rate between the two businesses?

A I would say, in my opinion, the chances of having trouble at either place would be higher and more likely to occur at the place where you had the nudity with the alcohol.

Q Why?

A Why? I tried to explain it a while ago. In my opinion if you got out here and you started to drinking and you get to feeling good, you are going to naturally do things you wouldn't do under normal circumstances. Plus, if you add nudity to it, you are going to feel a stronger urge to go up and fondle her or vice versa than you would if the girl was completely clothed.

We hold that this testimony is sufficient to support the belief of the Cocoa Beach Commission that Ordinance No. 612 will further the City's legitimate and substantial interests. *See also Hart Bookstores, Inc. v. Edmisten*, 612 F.2d at 828 n.9.

We need not dwell on the remaining two elements of *O'Brien* for in light of the preceding discussion they are plainly met. The pre-trial stipulation of the ordinance's purpose and effect essentially resolves the third element of the *O'Brien* test: whether the governmental interest is unrelated to the suppression of free speech. The stipulation effectively precludes any argument that the City Commissioners adopted the ordinance because of their personal dislike for nude dancing or because they sought to protect Cocoa Beach residents from exposure to nude entertainment. Instead the interest of Cocoa Beach's concerns the secondary effects of nude entertainment. In this respect, the instant case is readily distinguishable from *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975) and *Salem Inn, Inc. v. Frank (Salem Inn II)*, 381 F.Supp. 859 (E.D.N.Y.1979), aff'd., 522 F.2d 1045 (2d Cir. 1975).[9]

Finally, under the fourth element of *O'Brien*, we conclude that the incidental restriction on First Amendment rights is no greater than is essential to the furtherance of the City's interests. We have already determined that the City's association of criminal activity with nude entertainment in taverns is sufficiently supported by the record. It must follow that the separation of nude entertainment and on premises alcohol consumption is the least burdensome approach that could have been chosen by Cocoa Beach to serve its substantial interests. This element of *O'Brien* was not met in *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1974) where a municipal ordinance prohibited females from appearing topless in "any public place." In *Doran* the Supreme Court held that the district court had not abused its discretion in granting a preliminary injunction against enforcement of the measure. The Court stated, however, that a more narrowly drawn statute would probably survive judicial scrutiny. 422 U.S. at 932, 95 S.Ct. at 2568. *See also Chase v. Davelaar*, 645 F.2d 735 (9th Cir. 1981).[10]

9. In *Salem Inn II* the Second Circuit struck down an ordinance, enacted pursuant to the municipality's police power, that proscribed all nudity in cabarets, bars, lounges, dance halls, restaurants and coffee shops within the Town of North Hempstead. The court had concluded that the ordinance was an effort by municipal officials to shield the public from expression that they found offensive.

10. In *Chase* a county ordinance which prohibited topless dancing in all non-theatrical establishments selling food or beverages was struck down on the basis of overbreadth. The court

We conclude that Cocoa Beach has sufficiently justified the reach of Ordinance No. 612 under the four part test of *O'Brien* and that the provision is therefore not facially invalid. The decision of the district court is

AFFIRMED.

reasoned that "had [the ordinance] applied only to establishments that sell alcoholic beverages it would apparently have been constitutional.... [T]he rationale that appellants have advanced for the resolution suggests no reason why the scope of the ordinance was not [limited to establishments serving liquor]." 645 F.2d at 738.