437 So.2d 200 (1983)
CITY OF MIAMI SPRINGS, Appellant,
v.
J.J.T., INC., a Florida Corporation, d/b/a Doc Watson's Club, Appellee.
No. 82-119.
District Court of Appeal of Florida, Third District.
September 13, 1983.
*201 Weintraub, Weintraub, Seiden, Dudley & Press and Robert D. Orshan and Albert L. Weintraub, Miami, for appellant.
Simon, Schindler & Hurst and Sharon B. Jacobs and Deborah J. Miller, Miami, for appellee.
Before SCHWARTZ, C.J., and HENDRY and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
The issues presented by this appeal are first, whether a Florida municipality may constitutionally prohibit a liquor licensee from serving liquor at the same time that sexual performances or like activities are occurring on its premises; and second, if there be no constitutional impediment to such an enactment, whether the state statute regulating the licensing and sale of alcoholic beverages limits the power of the municipality to act.
The seed of this controversy was planted in 1978 when the City of Miami Springs (the City) adopted Ordinance 626-78 which, inter alia, made it a criminal offense for a liquor licensee to serve or permit the consumption of alcoholic drinks at the same time when any "sex related business activity or use" is taking place on the licensee's premises. The challenged part of the ordinance provides:
"Sec. 1(c). Regulation of the hours of business of licensees under beverage laws. Notwithstanding, the hours of business during which the sale of alcoholic beverages is permitted by the Miami Springs Code of Ordinances for businesses licensed under the beverage laws of the State of Florida to sell alcoholic beverages, the sale of alcoholic beverages and the consumption thereof on the licensed premises is prohibited during the hours when any `sex related business activity or use' as defined herein takes place on the licensed premises."
Sex-related business activity or use is defined, in part, as:
"commercial activity or use which takes place in taverns; ... and places of public entertainment, .. . wherein there is offered to the public for any type of consideration, sexual conduct ... or the display of specified anatomical areas."
In turn, specified anatomical areas are defined as:
"(i) less than completely and opaquely covered human or animal genitals, pubic region, buttocks or the female breasts below a point immediately above the top of the areola, and
"(ii) human male genitals in a discernably turgid state, even if completely and opaquely covered."
The stated predicate for the ordinance was the City Commission's findings that such activities as nude dancing and worse were lately proliferating in the City and that this development was deleterious to the quality of neighborhood life, inhibited positive growth, and created a drain on police and other relevant government services. More significantly, the Commission also found:
"that sex offenses, disturbances, drunkeness [sic], assault and injuries to persons are substantially increased at locations where sex related business activities and uses take place during the hours when alcoholic beverages are licensed to be sold and are consumed on said business premises."
J.J.T., Inc., the owner of Doc Watson's, a nightclub characterized by it as "offering exotic dancing which features female dancers *202 [appearing] in an unclothed state," brought suit seeking a declaration that the ordinance was invalid and to enjoin its enforcement. It claimed that the ordinance is void for vagueness, infringes on constitutionally-protected freedom of expression, treads in an area preempted by the state, and is an improper exercise of the police power because it bears no reasonable relation to the health, safety or welfare of the citizenry.
The trial court, declining to rule on the constitutional questions presented, entered summary judgment in favor of J.J.T., Inc. and enjoined the City from enforcing the ordinance against J.J.T., Inc., finding that the effect of the subject ordinance was to unlawfully take J.J.T.'s property, requiring that J.J.T.'s "operation be `grandfathered in' and not be curtailed by a subsequently enacted ordinance," and that the Legislature, having explicitly outlined the power of municipalities to regulate alcoholic beverage licensees in Sections 562.14 and 562.45(2), Florida Statutes (1981), had preempted the power to enact legislation of the sort found in the ordinance. The City appeals.
It is apodictic that even the complete prohibition of a previously lawful and existing business does not constitute a taking where the owner is not deprived of all reasonable use of his property, as long as the prohibition promotes the health, safety and welfare of the community and is thus a valid exercise of the police power. Penn Central Transportation Co. v. City of New York, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); Hadacheck v. Sebastian, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915); Reinman v. Little Rock, 237 U.S. 171, 35 S.Ct. 511, 59 L.Ed. 900 (1915); Mugler v. Kansas, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 (1887); Kuban v. McGimsey, 96 Nev. 105, 605 P.2d 623 (1980).
In Mugler v. Kansas, the United States Supreme Court explained:
"A prohibition simply upon the use of property for purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community, cannot, in any just sense, be deemed a taking or an appropriation of property for the public benefit. Such legislation does not disturb the owner in the control or use of his property for lawful purposes, nor restrict his right to dispose of it, but is only a declaration by the State that its use by anyone, for certain forbidden purposes, is prejudicial to the public interests. Nor can legislation of that character come within the Fourteenth Amendment, in any case, unless it is apparent that its real object is not to protect the community, or to promote the general well being, but, under the guise of police regulation, to deprive the owner of his liberty and property, without due process of law. The power which the States have of prohibiting such use by individuals of their property as will be prejudicial to the health, the morals, or the safety of the public, is not  and, consistently with the existence and safety of organized society, cannot be  burdened with the condition that the State must compensate such individual owners for pecuniary losses they may sustain, by reason of their not being permitted, by a noxious use of their property, to inflict injury upon the community. The exercise of the police power by the destruction of property which is itself a public nuisance, or the prohibition of its use in a particular way, whereby its value becomes depreciated, is very different from taking property for public use, or from depriving a person of his property without due process of law. In the one case, a nuisance only is abated; in the other, unoffending property is taken away from an innocent owner.
"It is true that when the defendants in these cases purchased or erected their breweries, the laws of the State did not forbid the manufacture of intoxicating liquors. But the State did not thereby give any assurance, or come under an obligation, that its legislation upon that subject would remain unchanged. Indeed, ... the supervision of the public morals is a governmental power, `continuing in its nature,' and `to be dealt with as *203 the special exigencies of the moment may require;' and that, `for this purpose, the largest legislative discretion is allowed, and the discretion cannot be parted with any more than the power itself.' ... `If the public safety or the public morals require the discontinuance of any manufacture or traffic, the hand of the Legislature cannot be stayed from providing for its discontinuance by any incidental inconvenience which individuals or corporations may suffer.'"
123 U.S. at 668-670, 8 S.Ct. at 301, 31 L.Ed. at 213 (citations omitted).
Since it is obvious  and J.J.T. does not, and cannot, seriously contend otherwise  that the ordinance in question does not deprive J.J.T. of all reasonable use of its property, necessarily implicit in the trial court's finding that the ordinance constituted a taking of property without due process of law is a determination that the ordinance was not a proper exercise of the City's police power. Therefore, although the trial court ostensibly avoided the constitutional question of whether the ordinance was an improper exercise of the police power, its determination that there was a taking in effect affirmatively answered the question. We think the trial court's answer was erroneous.
"[T]he regulation of the liquor traffic is one of the oldest and most untrammeled of legislative powers." Goesaert v. Cleary, 335 U.S. 464, 465, 69 S.Ct. 198, 199, 93 L.Ed. 163, 165 (1948). Laws pertaining to places where liquor is dispensed which are found to have some basis in reason have been historically upheld as not impinging upon the First Amendment right to free expression, California v. LaRue, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972) (state's ban of live performances of a sexual nature); Richter v. Department of Alcoholic Beverage Control, 559 F.2d 1168 (9th Cir.1977), cert. denied, 434 U.S. 1046, 98 S.Ct. 891, 54 L.Ed.2d 797 (1978) (same); and as not being improper exercises of the police power, Nelson v. State ex rel. Gross, 157 Fla. 412, 26 So.2d 60 (1946) (ordinance forbidding female bartenders); City of Miami v. Jiminez, 130 So.2d 109 (Fla. 3d DCA 1961) (ordinance prohibiting female bar employees from accepting drinks paid for by customers); Grand Faloon Tavern, Inc. v. Wicker, 670 F.2d 943 (11th Cir.1982), cert. denied, ___ U.S. ___, 103 S.Ct. 132, 74 L.Ed.2d 113 (1982) (ordinance banning exposure of private parts or female breasts in bars). See also Barmat v. Robertson, 125 Ariz. 514, 611 P.2d 101 (Ariz. Ct. App. 1980), appeal dismissed, 449 U.S. 894, 101 S.Ct. 259, 66 L.Ed.2d 124 (1980); Wright v. Town of Huxley, 249 N.W.2d 672 (Iowa 1977); Boston Licensing Board v. Alcoholic Beverages Control Commission, 367 Mass. 788, 328 N.E.2d 848 (1975); Mazza v. Cavicchia, 15 N.J. 498, 105 A.2d 545 (1954).[1] In essence, then, it is well recognized in the area of liquor legislation, as elsewhere, that if any "reasonable argument exists on the question of whether an ordinance is arbitrary or unreasonable, the legislative will must prevail," Inman v. City of Miami, 197 So.2d 50, 52 (Fla. 3d DCA), cert. denied, 201 So.2d 895 (Fla. 1967), cert. denied, 389 U.S. 1048, 88 S.Ct. 769, 19 L.Ed.2d 841 (1968), no matter what a court's view may be of the wisdom of the legislation. Nelson v. State ex rel. Gross, 26 So.2d at 61 ("The voice of the Legislature and not the voice of the public is the legal barometer by which the court must determine liquor trends.").
Therefore, giving due deference to the legislative will, our inquiry is limited to the question of whether there is some rational nexus between prohibiting the sale *204 and consumption of liquor when sex-related business activity is taking place and the health, safety or welfare of the public.
In the present case, the nexus is amply supported by the Commission's finding "that sex offenses, disturbances, drunkenness, assaults and injuries to persons are substantially increased at locations where sex related business activities and uses take place during the hours when alcoholic beverages are licensed to be sold and are consumed on said business premises," which finding, in turn, is supported by affidavits of the Clerk and Chief of Police of the City, which recite, inter alia:
"4. That the City of Miami Springs has found that proliferation of the Plaintiff's sex related business creates an impact on the ability of the City to provide governmental services when the business activity is carried out in connection with the consumption of alcoholic beverages.
"5. That the City of Miami Springs police records show that sex offenses, disturbances, drunkenness, assaults and injuries to persons have substantially increased at Plaintiff's business establishment when sex related business activities take place during the hours when alcoholic beverages are sold at the establishment."
Because the record clearly establishes the necessary nexus under the most stringent of tests, we need not decide whether this nexus is a proper subject for judicial notice, see, e.g., City of Miami v. Jiminez, 130 So.2d 109 (Fla. 3d DCA 1961) (where court took judicial notice of the fact that "the regulation of the contact between female employees and the public in drinking establishments is a proper matter of municipal legislation," id. at 110), whether it may be established merely by reference to the legislative findings in the preamble to the ordinance, compare Board of County Commissioners v. Dexterhouse, 348 So.2d 916, 918 (Fla. 2d DCA 1977), affirmed sub nom. Martin v. Board of County Commissioners, 364 So.2d 449 (Fla. 1978) (preamble finding nexus between "concurrent consumption of alcoholic beverages and the nude and semi-nude activities [of females] ... and an increase in criminal activities, moral degradation, and disturbance of the peace and good order of the community ...," sufficient), with Stadnik v. Shell's City, Inc., 140 So.2d 871 (Fla. 1962) (legislative findings are presumptively correct, but are not binding where clearly erroneous, arbitrary or wholly unwarranted); Moore v. Thompson, 126 So.2d 543 (Fla. 1960) (same), and Seagram-Distillers Corp. v. Ben Greene, Inc., 54 So.2d 235 (Fla. 1951) (no presumption of correctness attaches to legislative findings unless the findings be findings of fact), or whether it must be established by some greater proof, see Grand Faloon Tavern, Inc. v. Wicker, 670 F.2d 943 (11th Cir.1982).[2]
Our conclusion that the ordinance under review was an appropriate exercise of the City's police power is therefore dispositive of J.J.T.'s claim that the ordinance constitutes an unlawful taking of its property, as well as its claim that the ordinance is an improper exercise of the police power.
We turn now to J.J.T.'s claim that the City was powerless to enact the ordinance, such power being exclusively vested in the State acting through the Division of Alcoholic Beverages and Tobacco by Sections 561.02 and 561.11, Florida Statutes (1981).[3]
*205 In our view, Nelson v. State ex rel. Gross, 157 Fla. 412, 26 So.2d 60 (1946), and Board of County Commissioners v. Dexterhouse, 348 So.2d 916 (Fla. 2d DCA 1977), taken together, require that we reject this claim.
In Dexterhouse, the county enacted an ordinance making it unlawful for sellers of alcoholic beverages for consumption on the premises to permit females to expose their breasts on such premises. Certain liquor licensees attacked the ordinance on the ground, inter alia, that the State had preempted the right to regulate in this field. Acknowledging that the regulation and operation of establishments selling alcoholic beverages was statutorily vested in the then-called Division of Beverages, with local control being limited by Section 562.45(2), Florida Statutes, to hours of operation, location of the business and sanitary regulations, the court nonetheless concluded that the ordinance was "one directed at the discipline and good order of persons while in establishments selling alcoholic beverages," and therefore did not interfere or conflict with the State's power to regulate. Thus, if the ordinance before us is read as condemning nudity and the like on the premises during only such times as alcoholic beverages are being sold or consumed, then the ordinance is a fortiori within the City's power to enact under Dexterhouse, since the ordinance there effected a total ban.
On the other hand, if the ordinance under scrutiny is read as one directed at the sale of alcoholic beverages rather than at the "discipline and good order of persons" on the premises, then the analysis in Nelson controls. In Nelson, the court held that a municipality's power over establishments selling alcoholic beverages was not limited, despite the language of the statute, to hours of operation, location of the business, and sanitary regulations, but instead extended to any regulation (in Nelson, that "no female shall be employed for the purpose of, or be permitted to serve any liquors by the drink over any bar or counter") which did not interfere with some provision of, or affect any purpose in, the Beverage Act. Cf. State ex rel. Anthony Distributors, Inc. v. Pickett, 59 So.2d 856 (Fla. 1952) (ordinance authorizing city to investigate the character of licensees and to decline licenses to those it determined to be unfit held to contravene Beverage Act). Thus, under any reading of the present ordinance,[4] the State beverage law is no impediment to its enactment.
Having concluded that neither of the theories upon which the trial court held the ordinance unenforceable against J.J.T. will support the judgment below, and that the ordinance is a proper exercise of the City's police power, we now look to the other theories advanced by J.J.T. to see if they will support the judgment. See, e.g., Firestone v. Firestone, 263 So.2d 223 (Fla. 1972); In re Estate of Yohn, 238 So.2d 290 (Fla. 1970); Bergen v. Carson, 417 So.2d 1080 (Fla. 1st DCA 1982).
J.J.T.'s contention that the ordinance is void for vagueness is totally without merit. Its claim that the ordinance infringes on its constitutionally protected right to freedom of expression is answered adversely to it in California v. LaRue, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342; Grand Faloon Tavern, Inc. v. Wicker, 670 F.2d 943 (11th Cir.1982); Richter v. Department *206 of Alcoholic Beverage Control, 559 F.2d 1168 (9th Cir.1977); Board of County Commissioners v. Dexterhouse, 348 So.2d 916 (Fla. 2d DCA 1977), all of which recognize that sexual activity or nudity which might elsewhere be entitled to First Amendment protection is not entitled to the same protection where liquor is served, and the conduct is thus merely incidental to a commercial endeavor.
Accordingly, the judgment of the trial court is reversed with directions to enter judgment in favor of the City of Miami Springs, declaring the ordinance under attack to be valid and in full force and effect.
Reversed and remanded with directions.
NOTES
[1] Indeed, in earlier times such laws, even though discriminating against one sex, were held not to offend against the constitutional guarantee of equal protection, Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (state statute forbidding females, except wives and daughters of owners of liquor establishments, from being bartenders); Cronin v. Adams, 192 U.S. 108, 24 S.Ct. 219, 48 L.Ed. 365 (1904) (municipal ordinance prohibiting females from waiting on any person in saloon). It is unlikely that these same laws would pass muster in today's world. See, e.g., Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); White v. Fleming, 522 F.2d 730 (7th Cir.1975). The ordinance under review is, however, gender neutral, and no equal protection problem is presented.
[2] The court in Grand Faloon suggested that the required quantum of proof to establish the nexus increases when the legislation significantly curtails some activity protected under the First Amendment. See 670 F.2d at 949. Since non-obscene sex-related business activities may be entitled to protection as free expression when not conducted on premises where liquor is sold, California v. LaRue, 409 U.S. 109, 114, 93 S.Ct. 390, 395, 34 L.Ed.2d 342; Board of County Comm'rs. v. Dexterhouse, 348 So.2d at 919 n. 2, it is certainly arguable that even though such expression may be prohibited in bars and saloons, such prohibition should be supported by a higher quantum of proof.
[3] We note that J.J.T. made no attack upon the ordinance on the ground that the Legislature preempted the field of obscenity in Section 847.09, Florida Statutes (1981). As the City Commission specifically stated, the ordinance in question does not attempt to ban obscene performances or activities, but instead reaches sex-related activities in liquor establishments whether obscene or not. Proof that one violated the ordinance would not require an inquiry into whether the performance or activity was obscene, and the legislative purpose announced in Section 847.09, namely, "to make the application and enforcement of ss. 847.07-847.09 uniform throughout the state," would not be offended by the city ordinance. And, even if the motive of the City Commissioners in enacting the ordinance were to ban obscene performances, or, as is suggested, to harm Doc Watson's Club and no other, inquiry into motives is irrelevant in testing the validity of the ordinance. See City of Pompano Beach v. Big Daddy's, Inc., 375 So.2d 281 (Fla. 1979); Hardage v. City of Jacksonville Beach, 399 So.2d 1077 (Fla. 1st DCA 1981); Other Place of Miami v. City of Hialeah Gardens, 353 So.2d 861 (Fla. 3d DCA 1977).
[4] We therefore need not decide whether the reading urged by the City, that is, that the ordinance comes within the express provision of the Beverage Act, see § 562.45(2), Fla. Stat. (1981), permitting local control over hours of operation, is appropriate.