Laurie PENSACK, d/b/a Le Bakery
Sensual, Plaintiff,

v.

The CITY AND COUNTY OF DENVER,
the City Council of the City and County
of Denver, the Department of Zoning
Administration, City and County of
Denver, and Dorothy Nepa, Administra-
tor of the Department of Zoning Ad-
ministration, Defendants.

Civ. A. No. 85–M–1651.

United States District Court,
D. Colorado.

Feb. 25, 1986.

Jeffrey A. Chase, Holme, Roberts &
Owen, Denver, Colo., for plaintiff.

John L. Stoffel, Jr., Asst. City Atty.,
Denver, Colo., for defendants.

## MEMORANDUM OPINION
## AND ORDER

MATSCH, District Judge.

The plaintiff, Laurie Pensack, is the sole
proprietor of a bakery business which she
operates under the name Le Bakery Sensu-
al ("Le Bakery") in Aurora, Colorado. Le
Bakery is different from other bakeries in
that it specializes in "theme" cakes made to
meet customers' requests. Thus, cakes are
decorated for special occasions and in ac-
cordance with the individual customer's
lifestyle, interests, whim, fancy or pleas-
ure. Le Bakery's advertising emphasizes
that it is an "outlet for erotic edibles and
custom baked goods beyond your wildest
dreams!"

While the baked goods sold on any given
day will vary according to customer de-
mands, Le Bakery has some stock items in
its regular inventory, and it maintains a
brochure of pictures portraying cakes
which have been made for customers. A

potential customer may look through that brochure and order one of the cakes from a photograph, or request an entirely new design.

Many of the cakes made and sold have strong sexual themes, and include depictions of sexual organs and sexual activities. The regular inventory includes such cakes. Many of the cakes sold have themes and subjects which have no sexual content, and include such subjects as golf, football and other activities. The cakes also carry messages which include birthday greetings, anniversary wishes, business-related messages, and more personal communications. The content of the messages is controlled by the customers and many request language of sexual significance. Le Bakery also sells greeting cards and novelty gift items, most of which have a humorous bent, and many of which have some kind of sexual reference or innuendo.

Laurie Pensack acquired Le Bakery from the estate of Steve Saran in the summer of 1984. Mr. Saran had operated the business at 360 Broadway in the City and County of Denver, Colorado. That location is in a B–4 zone in which a bakery is a permitted use of right. Other permitted uses of right within a B–4 zone include a bookstore, an art gallery, a newspaper distribution station, an adult amusement or entertainment center, a "sexually-oriented commercial enterprise," a theater, an "adult theater", and many other types of business.

Steve Saran died on March 4, 1984. On March 12, 1984, the Zoning Administrator of the City and County of Denver issued a cease and desist order to Le Bakery, contending that the retail bakery use which had been approved had been converted "into an adult bookstore and a sexually-oriented commercial enterprise" in violation of that provision of the Denver Zoning Ordinance which requires that certain uses in a B–4 zone must be located more than 500 feet from any residential district, and that not more than two such uses may be located within 1,000 feet of each other. The uses subject to that separation requirement include adult amusement or entertainment centers, adult bookstores, sexually-oriented commercial enterprises, and adult theaters. The property at 360 Broadway is within 500 feet of a residential zone. Saran's estate did not challenge the cease and desist order, and when Laurie Pensack purchased the business, she moved the location to Aurora to avoid the Denver zoning problem.

On May 29, 1985, Ms. Pensack applied for and was granted a use permit for the 360 Broadway location for the following use: "retail outlet for baked goods, chocolates, and hard candies, including cakes, cupcakes, cookies, pastries, milk and white chocolates, and the like." The application and permit did not include cards, gifts and novelty items.

On June 3, 1985, the Zoning Administrator rescinded the permit, and sent Ms. Pensack an Application For Use Permit with the following restriction:

... not including goods and items held for sale which are distinguished or characterized by their emphasis on matters depicting, describing or relating to "specified sexual activities" or "specified anatomical areas," or an establishment with a segment or sections devoted to the sale or display of such material.

That language is an excerpt from the zoning ordinance definition of an adult bookstore, which in its entirety, reads as follows:

**Book store, adult.** An establishment having as a substantial or significant portion of its stock in trade, books, magazines and other periodicals and goods and items held for sale which are distinguished or characterized by their emphasis on matters depicting, describing or relating to "specified sexual activities" or "specified anatomical areas," or an establishment with a segment or sections devoted to the sale or display of such material.

Denver, Colo., Rev.Mun.Code § 59–2(20) (1982).

Ms. Pensack did not appeal that action, electing to challenge it by this civil action for an injunction, declaratory judgment and

damages pursuant to 42 U.S.C. § 1983, within the jurisdiction provided by 28 U.S.C. § 1343. The parties agreed to a bifurcation of the issues, and proceeded to trial only on liability. Most of the facts have been stipulated.

The Zoning Administrator sought to impose an absolute prohibition on the sale of any goods and items depicting "specified sexual activities" or "specified anatomical areas" as a condition to the grant of a use permit to the plaintiff. The imposition of such a condition by an administrator without legislative authority is, by itself, an unconstitutional restriction on the First Amendment rights of the plaintiff. Support for the Administrator's denial must, therefore, depend upon the application of the restrictions for "specified sexual activities" and "specified anatomical areas" in the zoning ordinance. The condition sought to be imposed must necessarily, then, be modified to prohibit such goods and items only if they constitute a "substantial or significant portion" of the goods and items held for sale. The question then is whether the plaintiff's business can be restricted lawfully under that ordinance.

The plaintiff contends that Le Bakery is not an adult bookstore because the business does not sell books, magazines, or other periodicals. There is no merit to that contention. The conjunctive "and" is appropriately read as the disjunctive "or" in applying this ordinance. Clearly, some of the cakes available for sale and sold by Le Bakery depict "specified sexual activities" or "specified anatomical areas" as those phrases are defined in the ordinance. By its terms, the adult bookstore definition is applicable to Le Bakery if it can be said that "a substantial or significant portion" of the cakes available for sale are of the specified types.

Denver has no administrative regulations for the application of the zoning ordinance as it relates to adult bookstores. The Zoning Administrator has adopted the definition of "accessory use" as a working standard for determining "substantial" and "significant" in applying the location restrictions for an adult bookstore in a B–4 zone. The Denver Zoning Ordinance defines an accessory use as one which is clearly incidental to a use by right, and which is customary to and commonly associated with the operation of the use by right, and which does not exceed 10% of the gross floor area utilized by the use by right.

The plaintiff asserts that the application of this zoning restriction to her business is a deprivation of her rights protected by the First and Fourteenth Amendments to the United States Constitution. The defendants do not contend that any of the plaintiff's products offered for sale are obscene, and the plaintiff does not dispute that the 500 feet, and 1,000 feet locational restrictions for "adult bookstores" are rationally related to a legitimate governmental interest.

The defendants rely principally on the precedent of *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), in support of their position. The Denver ordinance is substantially similar to the Detroit ordinances involved in that case. The plaintiff seeks to distinguish that case by the factual difference that it involved movie theaters which showed only adult film fare, whereas Le Bakery makes and sells many products which have no sexual content of any kind. The difference is, indeed, significant. In writing for the Court in *American Mini Theatres*, Justice Stevens observed that the theaters did not plan to exhibit pictures outside the coverage of the ordinances, and that the only vagueness issue related to the amount of sexually explicit activity that may be portrayed before the material could be "characterized by an emphasis" on such matter.

The majority of the Court held that the theaters did not have standing to challenge the ordinances for vagueness as they may relate to other types of business. Additionally, Justice Stevens seemed to suggest that sexually explicit speech is not worthy of full First Amendment protection in this language:

[E]ven though we recognize that the First Amendment will not tolerate the total suppression of erotic materials that have some arguably artistic value, it is manifest that society's interest in protecting this type of expression is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate....

*Id.* at 70, 96 S.Ct. at 2452 (Stevens, J.). The Detroit ordinances were thought to be "nothing more than a limitation on the place where adult films may be exhibited." *Id.* at 71, 96 S.Ct. at 2453. A majority of the Justices (concurring and dissenting), considered sexually explicit non-obscene expression as being entitled to nothing less than the full protection of the First Amendment. *See id* at 84–85, 96 S.Ct. at 2459. Circuit courts have followed that view. *See e.g., Playtime Theaters, Inc. v. City of Renton,* 748 F.2d 527 (9th Cir.1984); *Grand Faloon Tavern, Inc. v. Wicker,* 670 F.2d 943 (11th Cir.1982); *Avalon Cinema Corp. v. Thompson,* 667 F.2d 659 (8th Cir. 1981).

The test which is used to measure a challenged regulation affecting speech was developed in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), and followed by Justice Powell in his concurring opinion in *American Mini Theatres.* Under this test, a regulation is constitutional only if (1) it is within the constitutional power of the government; (2) it furthers an important or substantial governmental interest; (3) the governmental interest is unrelated to the suppression of free speech; and (4) the incidental restriction on First Amendment freedom is no greater than is essential to further that interest. *O'Brien,* 391 U.S. at 377, 88 S.Ct. at 1679.

■ A city government has the power to establish reasonable land use and zoning restrictions in the interest of public safety and welfare. *Village of Belle Terre v. Boraas,* 416 U.S. 1, 4, 94 S.Ct. 1536, 1538–39, 39 L.Ed.2d 797 (1974); *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 387, 47 S.Ct. 114, 118, 71 L.Ed. 303 (1926).

The parties in this case stipulated that the ordinance furthers an important or substantial governmental interest. Accordingly, the first two *O'Brien* requirements are met.

■ An ordinance must be no more restrictive of protected communication than is necessary to protect the city's legitimate interests. *O'Brien,* 391 U.S. at 377, 88 S.Ct. at 1679. In upholding the Detroit ordinances in *American Mini Theatres,* the Supreme Court (Justice Stevens) noted that "[t]he situation would be quite different if the ordinance had the effect of suppressing, or greatly restricting access to, lawful speech." 427 U.S. at 71 n. 35, 96 S.Ct. at 2453 n. 35.

The suggestion by Justice Stevens that sexually explicit speech is a separate category of First Amendment communication is not supported by precedent as other Justices observed in their opinions in that case. Commercial speech has, of course, been recognized as of somewhat lesser importance than political speech, *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. 748, 771–72 n. 24, 96 S.Ct. 1817, 1830 n. 24, 48 L.Ed.2d 346 (1976); *Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 455–56, 98 S.Ct. 1912, 1918–19, 56 L.Ed.2d 444 (1978); *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n,* 447 U.S. 557, 562–63, 100 S.Ct. 2343, 2349–50, 65 L.Ed.2d 341 (1980), but it is improper to characterize the speech content of the plaintiff's business as commercial speech. What is presented here is a business which serves as an intermediary in communications between its customers and those who receive the products. Thus, the customer seeks to send a specific message to the donee of a cake baked for a particular purpose, such as a birthday, wedding anniversary, business party, or whatever. Perhaps the clearest analogy is the publication of a personal message in the classified advertising sections of a newspaper. It has been noted that a newspaper distribution station is a permitted use in a B–4 zone in Denver. Can it be said that if such a station distributed a newspa-

per which included more than 10% of its content in sexually specific messages in a personals section of classified advertising, the station must be characterized as an adult bookstore and restricted under the ordinance? What of an art gallery, also a permitted use in a B–4 zone? If more than 10% of the works of art are within the sexually specific categories defined in the ordinance, is the gallery an adult bookstore? Is the Denver Zoning Administrator going to monitor the films in a regular theater or examine the books in an ordinary bookstore to determine the quantity of sexually specific content in all that is shown and sold?

■ The plaintiff has made the argument that the ordinance is unconstitutional because it is too vague. The facial validity of the ordinance need not be decided in this case. As applied to Le Bakery, the adult bookstore restrictions of the Denver ordinance are a denial of due process because there is no adequate notice to the plaintiff as to what is restricted, and there are no sufficient standards for law enforcement to avoid the chilling effect on speech that is the consequence of uncertainty. *Entertainment Concepts, Inc. III v. Maciejewski,* 631 F.2d 497, 501 (7th Cir.1980), *cert. denied,* 450 U.S. 919, 101 S.Ct. 1366, 67 L.Ed.2d 346 (1981). As applied to the plaintiff's business, the ordinance is also overbroad because it affects or suppresses expression which is wholly unrelated to the governmental interest. *See Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *FCC v. Pacifica Foundation,* 438 U.S. 726, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978). Le Bakery is denied the opportunity to bake and sell children's birthday cakes at 360 Broadway because a varying and undeterminable number of cakes may be ordered and sold with explicit sexual communications.

The plaintiff's business promotes communications which may be perceived very differently according to the personal standards of the observers. There may be many who find these theme cakes crude, ribald or even disgusting. Such subjective evaluations are inappropriate levers for governmental power in a society in which self determination is a protected value. The function of the First Amendment is to provide that protection. In their brief, the defendants assert that the activities promoted by the plaintiff are "adult in nature and not such that children should be exposed to them." While the protection of children from non-obscene sexually explicit speech is a legitimate governmental purpose, it can be achieved by a lesser degree of intrusion than the absolute prohibition of the plaintiff's business within 500 feet from a residential zone, or 1,000 feet from an adult use. Such requirements as "screening" or age limitations on access to the premises are possible measures.

In short, the denial of the plaintiff's use permit upon the contention that the business constitutes an adult bookstore as defined in the zoning ordinance, and which is, therefore, subject to location restrictions beyond those which apply generally to permitted uses in a B–4 zone is an unconstitutional infringement of the rights of the plaintiff protected by the First Amendment to the Constitution of the United States. Accordingly, the defendants have infringed the constitutional rights of the plaintiff in refusing the use permit on the application. The remedy for that violation is a matter to be addressed in further proceedings in this civil action.

Upon the foregoing, it is

ORDERED, that the plaintiff has established a violation of her rights protected by the United States Constitution, and further proceedings will be held. A pre-trial conference will be held on *March 27, 1986 at 8:00 a.m.* in the Court's Conference Room, Second Floor, Post Office Building, 18th and Stout Streets (use 19th Street Entrance), Denver, Colorado.