United States Court of Appeals,

Eleventh Circuit.

No. 96-7073.

SAMMY'S OF MOBILE, LTD., an Alabama Limited Partnership;  Sammy's Management Company, Inc., an Alabama Corporation, Plaintiffs-Appellants,

v.

CITY OF MOBILE, a Body Corporate and Politic, Defendant-Appellee.

J & B SOCIAL CLUB, # 1, INC., d.b.a. The Candy Store, Jennifer Q. Bodiford;  et al., Plaintiffs-Appellants,

v.

The CITY OF MOBILE, ALABAMA, Defendant-Appellee.

May 8, 1998.

Appeal from the United States District Court for the Southern District of Alabama. (Nos. 96-0176-BH-M, 96-0246-BH-SL), W.b. Hand, Judge.

Before BIRCH, Circuit Judge, and HILL and KRAVITCH, Senior Circuit Judges.

HILL, Senior Circuit Judge:

The City of Mobile prohibits nude dancing in establishments licensed to sell liquor.  Two clubs brought suit seeking an injunction prohibiting the City from enforcing its ordinance.  The clubs claim the ordinance violates their rights under the First Amendment to the Constitution.  The district court granted summary judgment to the City. For the following reasons, we affirm.

I.

Ordinance 03-003[1] of the City of Mobile, Alabama provides:

It shall be unlawful for any manager, officer, agent, servant, employee, or person in charge of any establishment within the City of Mobile or the police jurisdiction thereof, licensed to

---

[1]The ordinance was enacted on February 6, 1996.

sell spirituous or vinous liquors or malt or brewed beverages under the laws of the State of Alabama, knowingly to exhibit, suffer, allow, permit, engage in, participate in, or be connected with, any motion picture, show, performance, or other presentation upon the licensed premises, which, in whole or in part, depicts nudity or sexual conducts or any simulation thereof.

Any person, firm or corporation convicted for violating this ordinance shall be fined not more than $500.00 and sentenced to imprisonment for a period not exceeding six months, at the discretion of the court trying the case.[2]

The preamble to the ordinance provides:

WHEREAS, the City Council of the City of Mobile, Alabama, finds and declares that nudity and sexual conduct and depiction thereof, coupled with alcohol in public places, encourages undesirable behavior and is not in the interest of the public health, safety, and welfare.

WHEREAS, the Council has chosen to avoid the disturbances associated with mixing alcohol and nude dancing by means of a reasonable restriction upon establishments which sell spiritous or vinous liquors or malt or brewed beverages.

NOW, THEREFORE, the Council adopts this Ordinance pursuant to the powers under the Twenty-first Amendment to the Constitution of the United States delegated to it by the State of Alabama.

*Id.*

Prior to the enactment of the ordinance, Sammy's of Mobile, Ltd., (Sammy's), and The Candy Store were licensed to sell alcoholic beverages for on-premises consumption and offered topless female dancing. Sammy's surrendered its liquor license after the passage of the ordinance, and continues to offer topless, as well as totally nude, dancing. The Candy Store has not surrendered its license and continues to provide topless dancing. Although the City has not yet enforced the ordinance against The Candy Store, the City has expressed an intent to do so.

_____

[2]The ordinance defines "nudity" as:

[T]he showing of the human male or female genitals, pubic area, or buttocks with less than a fully opaque covering, or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the darkened area surrounding the nipple, or the depiction of covered male genitals in a discernibly turgid state.

Sammy's filed suit against the City in Alabama state court seeking declaratory and injunctive relief, and the City removed the action to federal district court. The complaint alleges that the ordinance is unenforceable under the doctrine of equitable estoppel and that it violates the free speech clause of the First Amendment, the takings clause of the Fifth Amendment, the equal protection clause, both the substantive and procedural guarantees of the due process clause of the Fourteenth Amendment, and the ex post facto clause.

The Candy Store filed suit in federal district court seeking injunctive relief and damages, alleging that the ordinance violates the First Amendment, the Fifth Amendment, and the equal protection clause of the Fourteenth Amendment and that the ordinance is unenforceable under the doctrine of res judicata.[3]

The two cases were consolidated and all parties moved for summary judgment. The district court granted summary judgment to the City on all claims. The court concluded that the ordinance does not offend the First Amendment under the four-part test of *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), and that plaintiffs' remaining claims lack merit. Sammy's and The Candy Store appeal, contending that the district court erred in holding that the ordinance does not offend the First Amendment or the due process and equal protection clauses of the fourteenth Amendment. We review the district court's grant of summary judgment *de novo. Gordan v. Cochran,* 116 F.3d 1438, 1439 (11th Cir.1997).

II.

The Supreme Court has long upheld ordinances such as Mobile's. In *California v. LaRue,* 409 U.S. 109, 114, 93 S.Ct. 390, 395, 34 L.Ed.2d 342 (1972), the Court approved, as a valid exercise of the general police power, an ordinance prohibiting nude dancing where liquor was sold. The

---

[3]The district court denied both Sammy's and The Candy Store's motions for injunctive relief.

Court found the "conclusion, embodied in these regulations, that certain sexual performances and the dispensing of liquor by the drink ought not to occur at premises that have licenses was not an irrational one." *Id.* at 118, 93 S.Ct. at 397. Since then, many similar ordinances have been approved, including several in this circuit. *See New York State Liquor Authority v. Bellanca,* 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981); *City of Newport v. Iacobucci,* 479 U.S. 1047, 107 S.Ct. 913, 93 L.Ed.2d 862 (1987); *Lanier v. City of Newton,* 842 F.2d 253 (11th Cir.1988); *Int'l Eateries of America v. Broward County,* 941 F.2d 1157, 1162 (11th Cir.1991); *Grand Faloon Tavern, Inc. v. Wicker,* 670 F.2d 943 (11th Cir.1982); *Cafe 207, Inc. v. St. Johns County,* 856 F.Supp. 641, 645 (M.D.Fla.1994), *aff'd per curiam,* 66 F.3d 272 (11th Cir.1995).

Although such ordinances regulate expressive conduct,[4] the Court has determined that they are content-neutral and should be reviewed under the intermediate level of scrutiny articulated in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 570, 111 S.Ct. 2456, 2462-63, 115 L.Ed.2d 504 (1991). Under this test, an ordinance is constitutional if: (1) the interest served is within the power of the government; (2) the regulation furthers that interest; (3) the interest served is unrelated to free expression; and (4) there is no less restrictive alternative. *O'Brien* at 377, 88 S.Ct. at 1679 (quoted in *Barnes,* 501 U.S. at 567, 111 S.Ct. at 2461). In *Barnes,* the Court applied this test in upholding Indiana's prohibition on public nudity as applied to nude dancing. 501 U.S. at 570, 111 S.Ct. at 2462-63.

Recently, the Supreme Court has reaffirmed the precedential value of *LaRue* and the *Barnes-O'Brien* test. *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996). Although the Court disavowed the idea expressed in a long line of cases, including *LaRue,*

---

[4]The Supreme Court has recognized that nude dancing may have some expressive content. *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 566, 111 S.Ct. 2456, 2460, 115 L.Ed.2d 504 (1991).

that the Twenty-first Amendment lends an added presumption in favor of the validity of regulation of otherwise protected speech when it is at the site of the sale of alcoholic beverages, the Court observed that "[e]ntirely apart from the Twenty-first Amendment, the State has ample power to prohibit the sale of alcoholic beverages in inappropriate locations." 517 U.S. at 515, 116 S.Ct. at 1514. This power is located in the inherent police power of every state to regulate to promote public decency. *Id.*

The Court also reaffirmed that the *Barnes-O'Brien* intermediate level of review applies to such ordinances. *Id.* Under this test, the Court concluded, even after *44 Liquormart, LaRue,* "would come out the same way." *Id.* We are informed by this guidance and agree with the district court that the *Barnes-O'Brien* test is applicable to the Mobile ordinance.[5]

The district court held that the Mobile ordinance passes all these tests for a constitutional regulation of expressive conduct: the regulation of public health, safety, and morals is a valid and substantial state interest; the Mobile ordinance's statement of purpose and findings as to the problems created by the combination of alcohol and nude entertainment are sufficient to support the requirement that the regulation further this interest; this interest is unrelated to the suppression of free expression; and the ordinance is narrowly tailored to the perceived problem.

---

[5]The dissent rejects the application of *LaRue* and *Barnes* to the Mobile ordinance because it believes *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996), "eviscerated" the rationale of *LaRue.* This conclusion is reached despite the fact that the Supreme Court in *44 Liquormart* specifically cautions us against just such a view. By expressing its opinion that *LaRue* would come out the same way, the Court may have hoped to forestall the view that *44 Liquormart* is the death knell for ordinances prohibiting nude entertainment in bars. The Court characterized the Twenty-first Amendment analysis of *LaRue* as merely a "buttress" to the conclusion that the First Amendment did not invalidate California's prohibition of certain grossly sexual exhibitions in premises licensed to serve alcoholic beverages. 517 U.S. at 514-16, 116 S.Ct. at 1514. Although no longer buttressed by the added presumption of the Twenty-first Amendment, the Court was careful to remind us that such ordinances remain protected by the continued vitality of a long line of approving cases, including *LaRue* and *Barnes.*

We agree. The preamble to the ordinance finds that nudity and sexually explicit entertainment coupled with alcohol in public places "encourages undesirable behavior and is not in the interest of public health, safety, and welfare." Thus, the ordinance is aimed at the very type of harm found to create a substantial government interest in *LaRue, Barnes, International Eateries* and a host of other cases. Furthermore, Mobile has a "reasonable basis" for believing that its ordinance will serve this substantial governmental interest. *See Int'l Eateries,* 941 F.2d at 1162. The district court located this reasonable basis in the experience of other cities, studies done in other cities, caselaw reciting findings on the issue, as well as their own wisdom and common sense. This is sufficient.[6] The Supreme Court has itself noted that "[c]ommon sense indicates that any form of nudity coupled with alcohol in a public place begets undesirable behavior." *Bellanca,* 452 U.S. at 718, 101 S.Ct. at 2601. Finally, the requirement that the dancers partially cover their breasts or cease to serve alcohol is certainly the least restriction possible which would still further the city's interest in controlling the combustible mixture of alcohol and nudity.

The dissent believes that the ordinance does not meet the third requirement of this test, i.e., that the city's interest be unrelated to the suppression of the message of nude dancing. Indeed, the dissent rejects the applicability of the *Barnes-O'Brien* test itself because it finds the Mobile

---

[6]It is clear that under *Barnes,* there is no constitutional requirement that a city make particularized findings regarding the adverse effects of the combination of alcohol and nude entertainment. The Court noted that there were no findings nor any legislative history attached to the Indiana statute, but found the "statute's purpose of protecting societal order and morality is clear from its text and history." 501 U.S. at 568, 111 S.Ct. at 2461. *See also Cafe 207, Inc. v. St. Johns County,* 856 F.Supp. 641, 645 (M.D.Fla.1994), *aff'd per curiam,* 66 F.3d 272 (11th Cir.1995) ("It is now established as a matter of law by Supreme Court jurisprudence culminating in [*Barnes* ] that secondary effects of proscribed conduct may be taken into consideration by a court evaluating the governmental interests justifying impingement upon free speech rights even when, as in *Barnes,* there is no legislative history demonstrating that the lawmakers actually considered secondary effects or any other specific factor (such as protecting order and morality) in enacting the challenged law.").

ordinance to be a "content-based" regulation, subject to a "searching" level of scrutiny.[7]

Characterizing Mobile's ordinance as content-based is a clear departure from prior cases holding that such ordinances are not aimed at the erotic message of nude dancing. For example, in *Barnes,* the Supreme Court held that Indiana's interest in prohibiting public nude dancing was "unrelated to the suppression of free expression." 501 U.S. at 570, 111 S.Ct. at 2463. The Court rejected the argument that merely because nude dancing may have some expressive content, an ordinance prohibiting such dancing must be aimed at the suppression of that content. The purpose of Indiana's statute was not to suppress the erotic message of nude dancing, but to address the evil of public nudity. *Id.* The Court concluded, "[i]t was not the dancing that was prohibited, but simply its being done in the nude." *Id. See also Buzzetti v. New York City,* No. 97-7585, --- F.3d ---- (2d Cir. March 20, 1998) (ordinance barring adult businesses from residential zones and certain other areas is a content-neutral and aimed at curbing negative effects of adult businesses on surrounding areas rather than seeking to suppress free expression).

We too have rejected the idea that ordinances aimed at nude entertainment are necessarily content-based. In holding such an ordinance to be a valid regulation of the time, place and manner of expressive conduct, we wrote:

> The only restriction imposed by the ... ordinance is in terms of the *place* where nude dancing may be presented [i.e., only in places not serving alcohol]. This type of regulation has been recognized as *independent of expressive or communicative elements of conduct* in other contexts.

---

[7]The dissent's argument that the *Barnes-O'Brien* test is inapposite because the Indiana statute there was content-neutral, whereas Mobile's ordinance is content-based, ignores the claim in *Barnes.* While Indiana's statute, on its face, prohibits public nudity rather than "expressive conduct," the claim in *Barnes* was not that the statute was facially invalid, but that it was unconstitutional *as applied to nude dancing.* There was no claim in *Barnes* that the statute was unconstitutional because it prohibited nudity simpliciter. The claim was that the statute was unconstitutional because it prohibited nude dancing. The same claim is made against the Mobile ordinance.

*Grand Faloon Tavern,* 670 F.2d at 947(emphasis added).[8]

Similarly, the Mobile ordinance does not seek to ban whatever message is conveyed by nude dancing. It does not even seek to ban nude dancing. In prohibiting nude dancing where liquor is sold, the ordinance restricts only the place or manner of nude dancing without regulating any particular message it might convey. No party disputes that the completely nude dancing which Sammy's, having surrendered its liquor license, now presents is legal under the ordinance. Nude dancing appears to be allowed everywhere in Mobile, except where alcohol is served. Mobile is attempting only to regulate the sale of alcohol in inappropriate places and it has determined that it is inappropriately sold in places where nude dancing is offered. Therefore, the ordinance is constitutional under the *Barnes-O'Brien* test.

Furthermore, the *Barnes-O'Brien* test applies to this ordinance even if it is not strictly content-neutral. It is true that not all dancing is prohibited in Mobile, only nude dancing where liquor is served. To that extent, the ordinance refers to the "content" of the dancing. The dissent, however, seems to equate this *reference* to content with content *suppression.* The dissent says, for example, that the ordinance is an "outright ban targeted solely at conduct protected by the First Amendment" and that, "on its face, it singles out nude entertainment and thus the erotic message

_____

[8]Although the dissent relies heavily on our subsequent opinions in *Krueger v. City of Pensacola,* 759 F.2d 851 (11th Cir.1985) and *Leverett v. City of Pinellas Park,* 775 F.2d 1536 (11th Cir.1985), neither undermines *Grand Faloon's* premise that Mobil's ordinance is content-neutral. Both cases not only do not explicitly hold that regulations such as the one at bar are content-regulatory but also do not apply the strict scrutiny appropriate for content regulations. Instead, both *Krueger* and *Leverett* require only that cities demonstrate that ordinances such as Mobile's advance "legitimate interests" and struck down nude dancing ordinances because the records in those cases did not show that the ordinances furthered any legitimate government interest unrelated to the suppression of free expression. *See Krueger,* 759 F.2d at 855-56; *Leverett,* 775 F.2d at 1540-41.

conveyed by that conduct."[9]

The Supreme Court, however, does not equate reference to content with suppression of content. The Court applies the *Barnes-O'Brien* intermediate level of scrutiny to ordinances which distinguish between nude and clothed entertainment, but which are aimed only at the *secondary effects* of nude entertainment. *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 48, 106 S.Ct. 925, 929, 89 L.Ed.2d 29 (1986) (ordinance "by its terms [was] designed to prevent crime, protect city's retail trade, maintain property values, and generally protect and preserve the quality of the city's neighborhoods, commercial districts, and the quality of urban life"); *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 71 n. 34, 96 S.Ct. 2440, 2453 n. 34, 49 L.Ed.2d 310 ("[i]t is [the] secondary effect [of crime and urban deterioration] which these zoning ordinances attempt to avoid, not the dissemination of "offensive speech' ").

In *International Eateries,* we too upheld a city ordinance regulating nude dancing aimed at "protecting the quality of urban life from the secondary effects of adult businesses." 941 F.2d at 1162. Applying *Barnes-O'Brien* scrutiny, we concluded that the ordinance was valid because it furthered a substantial governmental interest in regulating these secondary effects. *Id. See also Buzzetti,*____ F.3d ____.

---

[9]In fact, the dissent apparently rejects the idea that any such ordinance might ever be justified as an attempt to address the undesirable secondary effects of the commingling of alcohol and nudity because such ordinances are "content-based regulations of expressive behavior." For example, the dissent states that the reason we upheld the City of Pinellas Park's ordinance prohibiting nudity in the course of food and drink service in *Leverett v. City of Pinellas Park,* 775 F.2d 1536 (11th Cir.1985), was *"because the ordinance did not apply to protected expression, such as dancing."* (emphasis added) To the dissent, any regulation of the place or manner of nude dancing is also necessarily a regulation of the content of such expression. This contention presupposes that all nude dancing conveys the same message, when, in fact, controversy rages both in academia and society at large as to whether nude dancing, films, and other such exhibitions express messages of liberation or submission. We cannot assume that any regulation addressing nude dancing is a content regulation.

Mobile also defends its ordinance as an attempt to combat the secondary effects of nude performance in a bar atmosphere. Just as the cities in *Renton, Young,* and *International Eateries,* it seeks, geographically, to separate adult entertainment establishments from other commercial establishments—in this case, bars—in order to minimize the secondary effects of that combination.

The dissent rejects this analogy. It believes these cases are inapposite because the zoning regulations therein were "content-neutral," as opposed to the "content-based" Mobile ordinance. The zoning ordinances in *Renton, Young,* and *International Eateries,* however, were not content-neutral. They treated adult theaters differently from other theaters. They were content-based to the same extent, and in exactly the same way, as the ordinance in Mobile which treats nude dancing differently from clothed dancing.[10]

Mobile is attempting to regulate the secondary effects of the combination of alcohol and nude dancing without prohibiting either. It does not seek to ban bars or nude dancing. Everyone can still buy a drink and watch nude dancing in Mobile. They cannot, however, do both in the same place. The dissent seems to believe this may violate the rights of the people of Mobile, but we are unaware of any constitutional right to drink while watching nude dancing.[11] Accordingly, the

---

[10]In fact, the clothes required are few—a g-string and pasties will satisfy the statute.

[11]The reference in *44 Liquormart* to the proposition that government may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially his interest in freedom of speech—does not apply to this case. In *44 Liquormart,* the Rhode Island ordinance banned liquor price advertising. The ordinance, therefore, did not regulate the time, place, or manner, but rather totally suppressed the commercial speech involved. The Court merely reaffirmed that a state may not ban truthful, nonmisleading commercial speech, the Twenty-first Amendment notwithstanding.

Mobile has not banned nude dancing. In *LaRue,* the Court noted that "... the critical fact is that California has not forbidden these performances across the board. It has merely proscribed such performances in establishments that it licenses to sell liquor by the drink." 409 U.S. at 118, 93 S.Ct. at 397.

judgment of the district court is AFFIRMED.

KRAVITCH, Senior Circuit Judge, dissenting:

Instead of a generally applicable proscription on public nudity or a general prohibition on nudity in establishments licensed to serve alcohol, the City of Mobile chose to address "the combustible mixture of alcohol and nudity" by singling out traditionally protected forms of expression for criminal sanction. Although I agree with the majority that there is no "constitutional right to drink while watching nude dancing," the Constitution does confer a right to be free from government regulation that prohibits expressive conduct on the basis of content. Because I believe that the majority fundamentally misapprehends the restrictions that the First Amendment imposes upon governmental power to regulate expression, I respectfully dissent.

## I.

## A.

Preliminarily, I take issue with the majority's apparent assumption that because Ordinance 03-003 does not ban nude dancing outright, but rather merely conditions the right to present entertainment involving nudity on the surrender of a liquor license, the Ordinance does not significantly burden the exercise of First Amendment rights. The majority's reasoning ignores the well-established proposition that

> [e]ven though government is under no obligation to provide a person, or the public, a particular benefit, it does not follow that conferral of the benefit may be conditioned on the surrender of a constitutional right. In *Perry v. Sindermann,* 408 U.S. 593[, 597], 92 S.Ct. 2694[, 2697], 33 L.Ed.2d 570 (1972), relying on a host of cases applying that principle during the preceding quarter-century, the Court explained that government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially his interest in freedom of speech."

*44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 513, 116 S.Ct. 1495, 1513, 134 L.Ed.2d 711 (1996) (internal citation omitted). Although the City may regulate the sale or service of alcohol, it

may not condition the conferral of a liquor license—to which appellants concede they are not constitutionally entitled—on the forfeiture of the right to engage in expressive behavior.[1] Because the City authorizes the punishment, by fine or imprisonment, of licensees who "exhibit, suffer, allow, permit, engage in, participate in, or [are] connected with" one form of expressive behavior, the challenged ordinance imposes a significant burden upon First Amendment freedoms.[2]

B.

In denying appellants' respective motions for preliminary injunctive relief, the district court relied upon "a long line of [Twenty- first Amendment] cases upholding the states' authority to prohibit nude dancing in clubs licensed to sell alcohol."[3] After the district court entered the preliminary orders, but before the court ruled on the parties' motions for summary judgment, the Supreme Court decided *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996), which dispelled definitively the notion that the Twenty-first Amendment "qualif[ies] the constitutional prohibition against laws abridging the freedom of speech embodied

---

[1]The majority concedes that it is well-established that "nude dancing ... is expressive conduct within the outer perimeters of the First Amendment...." *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 566, 111 S.Ct. 2456, 2460, 115 L.Ed.2d 504 (1991).

[2]I disagree with the majority's conclusion that the "reference in *44 Liquormart* to the proposition that government may not deny a benefit to a person on a basis that infringes his constitutionally protected interests ... does not apply to this case." The applicability of the unconstitutional conditions doctrine does not turn on whether conferral of the discretionary benefit is conditioned upon completely foregoing the right to engage in expression or instead upon foregoing the right to engage in that expression in certain places or manners or at certain times. Rather, the doctrine applies as long as the governmental actor demands *some* sacrifice of a constitutional right in exchange for an otherwise discretionary benefit. *See FCC v. League of Women Voters,* 468 U.S. 364, 104 S.Ct. 3106, 82 L.Ed.2d 278 (1984) (invalidating provision of Public Broadcasting Act that prohibited noncommercial educational television stations that received public funds from endorsing candidates or editorializing); *Pickering v. Bd. Of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) (holding that constitutionally protected speech is impermissible ground for discharge from public employment).

[3]Summary Judgment Order ("Order") at 6.

in the First Amendment." *Id.* at 516, 116 S.Ct. at 1515. The district court recognized that *44 Liquormart* foreclosed the argument that the Twenty-first Amendment "provides an added presumption in favor of validity of state regulation in the area of topless dancing,"[4] but nevertheless concluded that the case "provided us with the roadmap for upholding" such state regulation.[5] In *44 Liquormart,* the Court cited *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991), for the proposition that states enjoy the power "to restrict ... "bacchanalian revelries' ... regardless of whether alcoholic beverages are involved." *44 Liquormart,* at 515, 116 S.Ct. at 1514 (citing *Barnes* and quoting *California v. LaRue,* 409 U.S. 109, 118, 93 S.Ct. 390, 397, 34 L.Ed.2d 342 (1972)). The district court interpreted this reference in *44 Liquormart* to mean that *Barnes* controls all First Amendment challenges to ordinances regulating nudity.

Following the district court's lead, the majority, although conceding that *44 Liquormart* requires application of First Amendment scrutiny to the ordinance in question, suggests that *44 Liquormart* confirms the City's power to regulate nude dancing in establishments licensed to sell alcohol. The majority concludes that the Court's treatment in *44 Liquormart* of earlier First Amendment cases involving state regulation of alcohol and nude dancing provides support for the conclusion that Ordinance 03-003 does not offend the First Amendment. In *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), one of those earlier cases, the Court upheld a regulation of nude dancing in establishments serving alcohol on the basis of the authority conferred upon states by the Twenty-first Amendment. In *44 Liquormart,* the Court, "[w]ithout questioning the holding in *LaRue,* ... disavow[ed] its reasoning insofar as it relied on the Twenty-first Amendment." 517 U.S. at 516, 116 S.Ct. at 1514. Because the Court in *44 Liquormart* stated in

---

[4]Order at 8 (internal quotations omitted).

[5]*Id.*

dicta that *LaRue* would have been resolved the same way had the Court not relied erroneously upon the Twenty-first Amendment, *see 44 Liquormart,* at 515, 116 S.Ct. at 1514 ("We are now persuaded that the Court's analysis in *LaRue* would have led to precisely the same result if it had placed no reliance on the Twenty-first Amendment."), the majority concludes that Ordinance 03-003 likewise should survive First Amendment scrutiny.

This case presents this circuit's first occasion to address the impact of *44 Liquormart* on state power to regulate nude dancing and the continued vitality of *LaRue.* In *LaRue,* the Court addressed the constitutionality of California Department of Alcoholic Beverage Control regulations that prohibited various forms of sexual conduct in licensed establishments. The Court, noting that "[t]he state regulations here challenged come to us, not in the context of censoring a dramatic performance in a theater, but rather in a context of licensing bars and nightclubs to sell liquor by the drink," *LaRue,* 409 U.S. at 114, 93 S.Ct. at 395, reviewed the regulations under a standard considerably more deferential than it ordinarily reviews prohibitions targeted at protected expressive behavior. In light of what the Court believed to be "the added presumption in favor of the validity of the state regulation in this area that the Twenty-first Amendment requires," *id.* at 118-19, 93 S.Ct. at 397, the Court decided that the Department's regulations were not "irrational" or "unreasonable," *id.* at 116, 93 S.Ct. at 396. The Court's discussion of the state's authority to regulate conduct with a communicative element, however, is hard to square with later decisions. The Court in *LaRue* stated:

> While we agree that at least some of the performances to which these regulations address themselves are within the limits of the constitutional protection of freedom of expression, the critical fact is that California has not forbidden these performances across the board. It has merely proscribed such performances in establishments that it licenses to sell liquor by the drink.

*Id.* at 118, 93 S.Ct. at 397. Precedent now makes clear that a state cannot condition a benefit on a forfeiture of First Amendment rights, *see 44 Liquormart,* at 512-14, 116 S.Ct. at 1513, or regulate

the time, place, or manner of protected expression with content-based prohibitions, *see Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989) ("[T]he government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions "are justified without reference to the content of the regulated speech ....' " (quoting *Clark v. Community for Creative Non-Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984))). Although the *44 Liquormart* Court, in dicta, did not disturb the holding of *LaRue,* the Court eviscerated the basis for that decision. The *44 Liquormart* Court squarely addressed whether the Twenty-first Amendment "qualif[ies] the constitutional prohibition against laws abridging the freedom of speech embodied in the First Amendment," 517 U.S. at 516, 116 S.Ct. at 1515, but it did not have before it, as did the Court in *LaRue* and as does our court now, a regulation prohibiting nude dancing in establishments with liquor licenses. The Court therefore had no occasion to evaluate closely the constitutionality of such an ordinance.[6] Unlike the majority, I

---

[6]*N.Y. State Liquor Auth. v. Bellanca,* 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981), and *Newport v. Iacobucci,* 479 U.S. 92, 107 S.Ct. 383, 93 L.Ed.2d 334 (1986), cited by the majority, likewise cannot provide support for the regulatory authority the City seeks to exercise. In *Bellanca,* the Court upheld a statute prohibiting nude dancing in establishments licensed to sell liquor. The sole basis of the Court's holding, however, was the power that it believed the Twenty-first Amendment conferred upon states to regulate alcohol. The Court concluded that "[j]udged by the standards announced in *LaRue* and *Doran* [*v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), which followed *LaRue* ], the statute at issue here is not unconstitutional." 452 U.S. at 717, 101 S.Ct. at 2601. Relying upon a greater-includes-the-lesser rationale that has since been discredited, *see 44 Liquormart,* at 510-12, 116 S.Ct. at 1512; *infra* Section I.C, at note 7, the Court reasoned that the "State's power to ban the sale of alcoholic beverages entirely includes the lesser power to ban the sale of liquor on premises where topless dancing occurs," *Bellanca,* 452 U.S. at 717, 101 S.Ct. at 2601, and that "[w]hatever artistic or communicative value may attach to topless dancing is overcome by the State's exercise of its broad powers arising under the Twenty-first Amendment," *id.* at 718, 101 S.Ct. at 2602. *Bellanca* thus rests upon a jurisprudential underpinning no longer followed by the Court.

Likewise, the Court in *Iacobucci,* following *LaRue* and *Bellanca,* upheld an ordinance prohibiting "performing nude or nearly nude" in establishments licensed to sell liquor. 479 U.S. at 93 n. 1, 107 S.Ct. at 384 n. 1. The sole rationale advanced by the

do not believe that the dicta in *44 Liquormart* compels us to uphold the ordinance challenged here.

C.

The majority reads *44 Liquormart* to require this court to review the challenged ordinance under the intermediate scrutiny applied in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). *O'Brien* scrutiny is appropriate when a generally applicable regulation not directed at the communicative elements of conduct nevertheless infringes rights of free expression. *See O'Brien,* 391 U.S. at 376-77, 88 S.Ct. at 1678-79. *O'Brien* scrutiny involves the application of a four-part test:

> [A] government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial government interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*Id.* at 377, 88 S.Ct. at 1679. The majority concludes that the Supreme Court's decision in *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991), which reviewed under *O'Brien* scrutiny a challenge to Indiana's prohibition on public nudity as applied to nude dancing, controls the case *sub judice* and accordingly that this court should apply the *O'Brien* four-part test.

In *Barnes,* the Court addressed the constitutionality of Indiana's "prohibition against complete nudity in public places," 501 U.S. at 564, 111 S.Ct. at 2459, as applied to establishments that provide totally nude dancing as entertainment. The Court, although recognizing that nude dancing "is expressive conduct within the outer perimeters of the First Amendment, though ... only

---

Court in upholding the regulation was the power that the Court believed the Twenty-first Amendment conferred upon states to regulate alcohol. *See id.* at 97, 107 S.Ct. at 386 (" "Given the added presumption in favor of the validity of the ... regulation in this area that the Twenty-first Amendment requires,' it is plain that, as in *Bellanca,* the interest in maintaining order outweighs the interest in free expression by dancing nude.") (quoting *LaRue,* 409 U.S. at 118-19, 93 S.Ct. at 397). After *44 Liquormart, Bellanca* and *Iacobucci* appear to lack precedential value.

marginally so," *id.* at 566, 111 S.Ct. at 2460, concluded that the law was valid because it was supported by a state interest in protecting order and morality, was not targeted at "the erotic message conveyed by the dancers," and imposed requirements no greater than those necessary to serve the state interest, *id.* at 567-572, 111 S.Ct. at 2461-63.

*Barnes,* however, does not control the case *sub judice.* The statute challenged in *Barnes,* although using the identical definition of "nudity" as the ordinance challenged here, did not single out one form of expression for disfavored treatment. The Indiana statute provided:

> A person who knowingly or intentionally, in a public place: (1) engages in sexual intercourse; (2) engages in deviate sexual conduct; (3) appears in a state of nudity; or (4) fondles the genitals of himself or another person; commits public indecency, a Class A misdemeanor.

Ind.Code § 35-45-4-1 (1988), *quoted in Barnes,* 501 U.S. at 569 n. 2, 111 S.Ct. at 2462 n. 2. In contrast, the ordinance challenged here makes it unlawful "knowingly to exhibit, suffer, allow, permit, engage in, participate in, or be connected with, *any motion picture, show, performance, or other presentation* upon the licensed premises, which, in whole or in part, depicts nudity or sexual conduct or any simulation thereof." City of Mobile Ord. 03-003 (emphasis added). Unlike the statute upheld in *Barnes,* which focused on nudity *simpliciter* and not on forms of expressive conduct or the messages they convey, the City of Mobile ordinance applies *only* to forms of conduct that are inherently—and traditionally—communicative: motion pictures, shows, performances, and "other presentation[s]." *Cf. Int'l Eateries of Am. v. Broward County,* 941 F.2d 1157, 1161 (11th Cir.1991) (noting distinction between generally applicable, content-neutral regulations and those prohibiting conduct "precisely because of its communicative attributes")(quoting *Barnes,* 501 U.S. at 577, 111 S.Ct. at 2466 (Scalia, J., concurring in the judgment) (emphasis omitted)), *cert. denied,* 503 U.S. 920, 112 S.Ct. 1294, 117 L.Ed.2d 517 (1992). A regulation that by its terms prohibits only traditional forms of expression cannot be said to be unrelated "to the suppression of free expression

within the meaning of *O'Brien* ... [and thus is] outside of *O'Brien* 's test altogether." *Texas v. Johnson,* 491 U.S. 397, 410, 109 S.Ct. 2533, 2543, 105 L.Ed.2d 342 (1989).[7]

This court often has distinguished regulations proscribing nudity *per se,* including general proscriptions on nudity in particular fora, from regulations targeted at expressive conduct. In *Grand Faloon Tavern, Inc. v. Wicker,* 670 F.2d 943 (11th Cir.1982), we upheld a city ordinance banning nudity on premises where alcohol was served. The ordinance, unlike the one before us now, did not

---

[7]En route to concluding that *O'Brien* intermediate scrutiny controls the case before us, the majority argues that the as-applied challenge in *Barnes* was simply a claim that the Indiana statute "was unconstitutional because it prohibited nude dancing" and thus that the claim in *Barnes* was the "same claim [that] is made against the Mobile ordinance." With all due respect, I believe that the majority misapprehends the difference between an as-applied challenge to a content-neutral regulation and a facial challenge to a content-based regulation.

The statute challenged in *Barnes* did not by its terms specifically proscribe nude dancing, but rather prohibited *all* public nudity—and thereby incidentally prohibited some otherwise lawful expression. That the claim raised by the respondents in that case sounded in the First Amendment does not mean that their claim was identical to the one made by appellants in the case before us. Courts long have distinguished between content-based regulations targeted at expression, on the one hand, and generally applicable, content-neutral regulations that incidentally burden expressive freedoms, on the other. *See generally* L. Tribe, American Constitutional Law §§ 12-2, 12-3 (1988). Simply because it is within governmental power to accomplish a particular end, such as a categorical ban on nudity that *a fortiori* includes a more specific ban on nude dancing, does not mean that any means chosen will satisfy the requirements of the First Amendment. Rather, the First Amendment often requires courts to invalidate regulations that accomplish ends that lawfully could be achieved by different means. *Compare Texas v. Johnson,* 491 U.S. 397, 406-410, 109 S.Ct. 2533, 2540-2543, 105 L.Ed.2d 342 (1989) (invalidating state law that prohibited "desecration of venerated object[s]," because by singling out symbolic objects for protection, the state's asserted interest was implicated only when "a person's treatment of the flag communicates some message"), *with O'Brien,* 391 U.S. at 370, 88 S.Ct. at 1675 (upholding conviction for burning draft card under statute that proscribed "knowingly destroy[ing]" or "knowingly mutilat[ing]" a Selective Service Registration certificate). Indeed, the First Amendment stands in part for the proposition that the greater power—in this case, the authority to regulate nudity—does not always include the lesser power—in this case, the authority to ban solely expressive conduct involving nudity. *See 44 Liquormart,* at 512, 116 S.Ct. at 1512 (rejecting greater-includes-the-lesser reading of the First Amendment and stating that "[t]he text of the First Amendment makes clear that the Constitution presumes that attempts to regulate speech are more dangerous than attempts to regulate conduct").

single out nudity in "any motion picture, show, performance, or other presentation," but rather simply banned all nudity in establishments offering alcohol for sale. *Id.* at 944 n. 2. Because the regulation thus was not targeted at traditionally expressive behavior, we applied *O'Brien* scrutiny and upheld the ban. In *Krueger v. City of Pensacola,* 759 F.2d 851 (11th Cir.1985), however, we invalidated a ban almost identical to that in *Grand Faloon* because, unlike the ban in *Grand Faloon,* which was supported by a legitimate and substantial government interest in regulating activities likely to lead to breaches of the peace, the record demonstrated that the city's motive was to restrict expression. 759 F.2d at 855-56. Both cases addressed regulations that facially banned *all* nudity in establishments licensed to serve alcohol, rather than solely nudity in the course of traditionally expressive forms of conduct. *See Krueger,* 759 F.2d at 853-54 n. 3; *Grand Faloon,* 670 F.2d at 944 n. 2.

Ordinance 03-003 on its face singles out nude *entertainment* and thus the "erotic message conveyed" by that conduct. *Barnes,* 501 U.S. at 570, 111 S.Ct. at 2463. Ordinance 03-003 would not by its terms apply, for example, to a nude waitress serving drinks at a licensed establishment or to a patron entering such a club nude, whereas it would apply to a production of "Hair" or "Equus"—or any other artistic production that includes nudity, however minor or incidental—at a club licensed to sell alcohol. *Cf. Barnes,* 501 U.S. at 585 n. 2, 111 S.Ct. at 2470 n. 2 (Souter, J., concurring in the judgment) ("It is difficult to see ... how the enforcement of Indiana's statute against nudity in a production of "Hair' or "Equus' somewhere other than an "adult' theater would further the State's interest in avoiding harmful secondary effects...."). Instead of targeting nudity *per se,* which clearly is a permissible exercise of municipal or state authority, *see Barnes, supra,* the Mobile

ordinance targets *only* conduct with communicative elements.[8]  Because courts consistently have

reviewed such contentbased restrictions with a level of scrutiny more searching than *O'Brien*

scrutiny, which we have applied to generally applicable, content-neutral regulations, the majority

is incorrect to conclude, simply because the claim before the court is a challenge to a nudity

ordinance, that *Barnes* 's *O'Brien* scrutiny is appropriate in this case.[9]

D.

Because I believe that the majority applies the wrong level of scrutiny, I address the City's

argument that time, place, and manner scrutiny—another form of intermediate scrutiny—is

applicable in this case.  In my view, in determining the appropriate level of scrutiny, this court

should look to the character of the regulation.  If the regulation is content-based—because it singles

out one form of expression for disfavored treatment—then searching scrutiny is appropriate.  *See*

*Boos v. Barry,* 485 U.S. 312, 321, 108 S.Ct. 1157, 1164, 99 L.Ed.2d 333 (1988).  If, on the other

---

[8]The majority suggests that "[w]e cannot assume that any regulation addressing nude dancing is a content regulation," because "controversy rages both in academia and society at large" over what precise message nude dancing conveys.  I would have thought, however, that an ordinance targeted at communicative activities that express multiple messages is as invidious as, if not more so than, an ordinance that targets merely one message.  One need only consider a simple example to see how subversive of basic First Amendment values the majority's reasoning is:  an ordinance banning all dancing would suppress a wide array of messages that could be conveyed by dancing, yet, according to the majority, that regulation would be permissible because "we cannot assume" that it targets any one *particular* message.

[9]Moreover, contrary to the majority's unsupported assertion, the Court in *44 Liquormart* did not suggest that *Barnes* 's *O'Brien* scrutiny should apply in all cases involving ordinances regulating nudity.  Instead, the Court merely cited *Barnes* to support the statement that "the Court has recognized that the States' inherent police powers provide ample authority to restrict the kind of "bacchanalian revelries' described in the *LaRue* opinion regardless of whether alcoholic beverages are involved."  *44 Liquormart,* at 515, 116 S.Ct. at 1514.  I doubt that the Court, in announcing a decision that restricted governmental power to regulate speech, meant to suggest that courts now should evaluate content-based regulations under the more-deferential *O'Brien* standard of review.  Instead, the Court's citation to *Barnes* merely confirms that states and municipalities presumptively may regulate nudity with generally applicable, content-neutral ordinances—ordinances wholly unlike that passed by the City in this case.

hand, the regulation is content-neutral—because it is justified not by "reference to the content of the regulated speech," *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.,* 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976), but rather to the "secondary effects" of that speech, *see Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 47, 106 S.Ct. 925, 929, 89 L.Ed.2d 29 (1986)—then less searching time, place, and manner scrutiny may be appropriate, *see id.* at 46, 106 S.Ct. at 928.

The City contends, and the majority agrees, that the Ordinance was not promulgated because of a disagreement with the message conveyed by nude dancing, but rather was an attempt to regulate the secondary effects of nude dancing. The City and the majority rely upon *Renton, supra, Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), and *Int'l Eateries of Am. v. Broward County,* 941 F.2d 1157, 1161 (11th Cir.1991), *cert. denied,* 503 U.S. 920, 112 S.Ct. 1294, 117 L.Ed.2d 517 (1992). In *Renton* and *Young,* the Court upheld zoning ordinances restricting the permissible locations for adult theaters that presented nude dancing. Although the regulations challenged in those cases "treat[ed] theaters that specialize in adult films differently from other kinds of theaters," *Renton,* 475 U.S. at 47, 106 S.Ct. at 929, and thus at first blush seemed to be content-based, the Court in each case concluded that the regulations were justified without reference to the content of the regulated speech because they were "aimed not at the *content* of the films ..., but rather at the *secondary effects* of such theaters on the surrounding community," *id.* (emphasis in original); *accord Young,* 427 U.S. at 71 n. 34, 96 S.Ct. at 2453 n. 34. In *Renton,* for example, the Court upheld the district court's conclusion that the "city's pursuit of its zoning interests here was unrelated to the suppression of free expression" because the Court believed that the ordinance "by its terms [was] designed to prevent crime, protect the city's retail trade, maintain property values, and generally protect and preserve the quality of the city's neighborhoods,

commercial districts, and the quality of urban life." *Id.* at 48, 106 S.Ct. at 929; *accord Young,* 427 U.S. at 71 n. 34, 96 S.Ct. at 2453 n. 34 (noting that "[i]t is [the] secondary effect [of crime and urban deterioration] which these zoning ordinances attempt to avoid, not the dissemination of "offensive' speech").

In *International Eateries,* this court applied *Renton* to uphold a local zoning ordinance restricting the permissible locations for clubs presenting non-obscene nude dancing. Applying time, place, and manner scrutiny, this concluded that the challenged ordinance: (1) furthered a substantial governmental interest in "protecting the quality of urban life from the secondary effects of adult businesses," 941 F.2d at 1162; (2) was narrowly tailored to further that interest because it focused only on those businesses likely to cause secondary effects, *id.* at 1163; and (3) allowed reasonable alternative avenues of communication because there were "sufficient alternative locations" where the theaters could lawfully operate, *id.* at 1165.[10]

The significant difference between the ordinance challenged in *International Eateries* and the one challenged here, however, is that the former was a zoning ordinance, whereas the one in the case before us is a direct regulation of expressive conduct.[11] Closely read, *Renton, Young,* and *International Eateries* apply only to zoning ordinances. *See Renton,* 475 U.S. at 49, 106 S.Ct. at 929-30 ("*[Z]oning ordinances* designed to combat the undesirable secondary effects of such

---

[10]We applied the *Renton* secondary-effects analysis in *International Eateries* because at issue was the validity of a zoning ordinance similar to that considered in *Renton* and *Young. See* 941 F.2d at 1161. Distinguishing *Barnes,* we concluded that *O'Brien* scrutiny was inappropriate because the regulation "single[d] out nude dancing rather than broadly prohibiting all public nudity." *Id.*

[11]Contrary to the majority's suggestion, Ordinance 03-003 does not seek "*geographically* [ ] to separate adult entertainment establishments from other commercial establishments." (Emphasis added). Instead, the Ordinance seeks categorically to ban nude dancing in establishments—wherever they may be located—that serve alcohol.

businesses are to be reviewed under the standards applicable to "content-neutral' time, place, and manner regulations.") (emphasis added); *Young,* 427 U.S. at 71, 96 S.Ct. at 2453 ("[W]hat is ultimately at stake is nothing more than a limitation on the place where adult films may be exhibited...."); *Int'l Eateries,* 941 F.2d at 1159 ("[T]he Supreme Court has held that under some circumstances cities may enact *zoning ordinances* that require adult movie theatres to locate only in certain areas, provided that the purpose of the regulation is to control the secondary effects of these businesses.") (emphasis added) (internal quotation omitted); *see also Buzzetti v. City of New York,* --- F.3d ----, No. 97-7585 (2d Cir. March 20, 1998) (upholding city's "Zoning Amendment," which "does not forbid the operation of any category of business [but i]nstead ... restricts the areas in which certain sexually-oriented businesses may operate"). Indeed, zoning regulations are amenable to time, place, and manner scrutiny at least in part because, although they restrict the locations available for a given use, they generally leave *some* areas open for the disfavored use. *See Renton,* 475 U.S. at 54, 106 S.Ct. at 932 ("[The City has] sought to make some areas available for adult theaters and their patrons, while at the same time preserving the quality of life in the community at large by preventing those theaters from locating in other areas. This, after all, is the essence of zoning."); *Young,* 427 U.S. at 71 n. 35, 96 S.Ct. at 2453 n. 35.

Unlike the zoning ordinances upheld in *Young, Renton,* and *International Eateries,* which preserved for adult entertainment "ample, accessible real estate," *Renton,* 475 U.S. at 53, 106 S.Ct. at 932, the City of Mobile's regulation prohibits establishments that wish to serve alcohol and present nude dancing from operating *anywhere.* Of course, as the City and the majority point out, appellants are free to provide nude dancing at their current locations as long as they are willing to forego the privilege of serving alcohol. As already stated, however, *see supra* Section I.A, this argument ignores the well-established proposition that government may not condition the "conferral

of [a] benefit ... on the surrender of a constitutional right." *44 Liquormart,* at 513, 116 S.Ct. at 1513. Although the Supreme Court and this circuit have upheld zoning regulations that, as measures of social policy, have dissipated or segregated the effects of adult theaters, neither has, without relying on a now-discredited view of the Twenty-first Amendment, upheld an outright ban targeted solely at conduct protected by the First Amendment.[12] Because I conclude that the secondary-effects exception is inapplicable in this case, I believe that this court should analyze Ordinance 03-003 as a content-based restriction.

E.

My conclusion that Ordinance 03-003 is a content-based restriction on protected expression that must be evaluated under searching judicial scrutiny finds strong support in case law. This court has distinguished between regulations of nudity that permissibly (and incidentally) burden protected expression and regulations that impermissibly target protected expression for sanction. In *Leverett v. City of Pinellas Park,* 775 F.2d 1536 (11th Cir.1985), this court upheld against a First Amendment challenge an ordinance prohibiting nudity in the course of food and drink service because the

---

[12]In *Barnes,* Justice Souter argued in his concurrence that Indiana could justify application of a generally applicable proscription of public nudity to nude dancing because the state has a legitimate and substantial government interest in combatting the secondary effects of adult entertainment. His concurrence, however, simply sought to justify the burden on First Amendment freedoms imposed by application of a content-neutral statute to expressive behavior—a result contemplated by *O'Brien*—and did not suggest that a prohibition, other than a zoning regulation, targeted at expressive behavior could be justified by reference to the secondary effects of the targeted behavior.

Likewise, in *Cafe 207, Inc. v. St. Johns County,* 66 F.3d 272 (11th Cir.1995), *aff'g* 856 F.Supp. 641 (M.D.Fla.1994), this court affirmed the district court's conclusion that the governmental-interest prong of the *O'Brien* test was satisfied because, *inter alia,* the regulation combatted the secondary effects of nudity in adult entertainment. 856 F.Supp. at 644. Like the statute in *Barnes,* the ordinance challenged in *Cafe 207* was a generally applicable, and not a content-based, prohibition on public nudity. The majority's reliance on *Cafe 207* thus is misplaced.

ordinance did not apply to protected expression, such as dancing. *See id.* at 1540. The court struck down a companion ordinance that prohibited "nude or semi-nude *entertainment* in any commercial establishment," *id.* at 1537 (emphasis added), however, because, as a direct regulation of conduct protected by the First Amendment, the court subjected it to "the stricter standard typically used to review an infringement on a protected liberty interest justified solely under the government's police power," *id.* at 1540 (citing *Krueger v. City of Pensacola,* 759 F.2d 851 (11th Cir.1985)). The court noted that in order to justify a content-based regulation of protected expression, the city had an obligation to "come forth with more than simply an articulation of some legitimate interest that the city could have had to justify its prohibition." *Leverett,* 775 F.2d at 1540 (internal quotations omitted).[13] Although the conclusory language contained in the ordinances that "competitive commercial exploitation of nudity is adverse to the public health, peace, morals and good order, and [that] it is in the best interest of the public health, safety and convenience to restrict such nudity ...," *id.* at 1539, was sufficient to justify the ordinance generally proscribing nudity in the course of food service because that ordinance did not "on its face govern activity protected by the First Amendment," *id.* at 1540, the language could not save the ordinance prohibiting nude entertainment.

The ordinance invalidated in *Leverett,* which was targeted solely at expressive conduct, is indistinguishable from the one challenged here. *See also BSA, Inc. v. King County,* 804 F.2d 1104, 1107-08 (9th Cir.1986) (enjoining operation of statute explicitly banning "common barroom type topless dancing" because the "[p]rohibition of a category of protected expression, including that which is sexually explicit, can be upheld only where it furthers a substantial governmental interest

---

[13]*See Leverett,* 775 F.2d at 1540 ("When a fundamental interest such as freedom of expression is regulated, the City must also show that the legitimate concern it articulates has "more than merely speculative factual grounds, and that it was actually a motivating factor in the passage of the legislation.' ") (quoting *Krueger v. City of Pensacola,* 759 F.2d 851, 855 (11th Cir.1985)).

unrelated to suppression of free expression ... and where the governmental interest could not be served by a means less intrusive on First Amendment activity"). I am convinced that this court should review Ordinance 03-003, as well, under "the stricter standard typically used to review an infringement on a protected liberty interest justified solely under the government's police power." *Leverett,* 775 F.2d at 1540.

F.

In my view, the City has not satisfied this stricter standard. To survive First Amendment scrutiny, the City must, at a minimum, demonstrate that its interest in regulating the conduct at issue in this case "is based on something other than a desire to censor the communication because of the community's dislike of its content." *Krueger,* 759 F.2d at 854. The City argues that it acted to address the adverse secondary effects of nude dancing combined with alcohol consumption and that the preamble to Ordinance 03-003 makes clear that the City was not targeting the message of the expressive conduct, but rather was combatting the secondary effects of that behavior.[14] The interests stated in the Ordinance's preamble—discouraging "undesirable behavior" and avoiding "disturbances"—are, of course, legitimate governmental interests. As in *Leverett,* however, "the City has made no showing as to the factual basis for its articulated concerns and the motivation for passage of [the ordinance] beyond the conclusions stated in the ordinance itself," 775 F.2d at 1540, a showing that is insufficient to "justify its infringement on protected expression," *id.* The majority concludes that the City permissibly relied upon other cities' findings that the commingling of alcohol and nudity produces undesirable effects. Although the majority is correct that "[t]he First

---

[14]Indeed, an argument by the City that it was worried about the effects of adult entertainment *alone,* as was the city in *Renton,* 475 U.S. at 50, 106 S.Ct. at 930, rather than the effects of the entertainment *combined* with alcohol consumption, would be unconvincing because the City still permits nude dancing; Sammy's has been presenting nude dancing (without alcohol) since this litigation began, yet has not violated Ordinance 03-003.

Amendment does not require a city, before enacting [a *zoning* ] ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses," *Renton,* 475 U.S. at 51, 106 S.Ct. at 931 (emphasis added),[15] this court consistently has required a significantly stronger showing to justify content-based regulations of expressive behavior outside of the zoning context, *see, e.g., Leverett,* 775 F.2d at 1540. The mere assertion, unsupported by any legislative findings, that a city seeks to address the undesirable secondary effects of a disfavored activity is insufficient to justify a regulation that by its terms prohibits only conduct that is protected by the First Amendment.

Even if the City had made findings, moreover, I have serious doubts that the City's interest in discouraging undesirable behavior and avoiding disturbances would be sufficient to justify Ordinance 03-003's content-based restriction. Furthermore, given the availability of alternative regulatory means that could accomplish the City's avowed goals without singling out protected expression for sanction, *see infra* Section II, in my view Ordinance 03-003 could not satisfy the

---

[15]*Accord Int'l Eateries,* 941 F.2d at 1162 (holding that a city "need not conduct its own studies" in order to "have a reasonable basis for its belief that the harm to be protected against [by the zoning ordinance] in fact exists"). Likewise, the proof requirements for regulations that are not targeted at expression may be relaxed. *See Barnes,* 501 U.S. at 584-85, 111 S.Ct. at 2470 (Souter, J., concurring in the judgment) ("[L]egislation seeking to combat the secondary effects of adult entertainment need not await localized proof of those effects.... I do not believe that a State is required affirmatively to undertake to litigate this issue repeatedly in every case."). *But cf. Triplett Grille, Inc. v. City of Akron,* 40 F.3d 129, 135-36 (6th Cir.1994) (holding that "because the City has failed to demonstrate a link between nudity in non-adult entertainment and secondary effects, we do agree with the district court that the Akron ordinance must be struck down as facially unconstitutional under the First Amendment overbreadth doctrine"; stating that "[t]he ordinance makes no attempt to regulate only those expressive activities associated with harmful secondary effects and includes no limiting provisions"). Contrary to the majority's suggestion however, this court never has allowed a state or municipality to enact a *content-based* restriction on expression based upon a mere showing that other localities have identified an evil to be addressed.

means scrutiny that the First Amendment requires. I therefore would hold that the district court erred in granting summary judgment in favor of the City on appellants' First Amendment claim and that the district court should have granted summary judgment in favor of appellants on their facial challenge to Ordinance 03-003.

## II.

This court does not have before it a generally applicable proscription on public nudity, *see, e.g., Barnes,* 501 U.S. at 569 n. 2, 111 S.Ct. at 2462 n. 2, or a general prohibition on nudity in establishments licensed to serve alcohol that is not limited solely to expressive conduct, *see, e.g., Grand Faloon Tavern, Inc. v. Wicker,* 670 F.2d 943, 944 n. 2 (11th Cir.1982). Presumably, either of those approaches would have accomplished the City's avowed goals and survived First Amendment scrutiny.[16] Instead, the City of Mobile chose to address the problems associated with "nudity, sexual conduct[,] and [the] depiction thereof[ ] coupled with alcohol in public places," City of Mobile Ord. 03-003, by subjecting to criminal sanction *only* activity clearly recognized to be within the protection of the First Amendment. Because I believe that the First Amendment prohibits the City of Mobile from enacting such a regulation and that the majority has misapplied long-established First Amendment principles, I respectfully DISSENT.

---

[16]Of course, these approaches could fail First Amendment scrutiny if they were merely intended to mask a governmental motive to suppress protected expression. *See Krueger v. City of Pensacola,* 759 F.2d 851 (11th Cir.1985).